UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YOLANDA D. TYSON,

                    Plaintiff,

        v.

THE TOWN OF RAMAPO;
CHRISTOPHER P. ST. LAWRENCE, as
Town Supervisor; YITZCHOK ULLMAN, as
Councilman; SAMUEL TRESS, as
Councilman; BRENDEL CHARLES aka
BRENDEL LOGAN, as Councilwoman;
PATRICK J. WITHERS, as Councilman;
BRAD R. WEIDEL, as Chief of Police,
Police Department Town of Ramapo; PETER
F. BROWER, as Former Chief of Police,
Police Department Town of Ramapo; and
THOMAS COKELEY, as Captain, Police
Department Town of Ramapo, each sued
individually and in their official capacities as
employees of THE TOWN OF RAMAPO,

                    Defendants.

No. 17-CV-4990 (KMK)

OPINION & ORDER

Appearances:

Eric Sanders, Esq.
The Sanders Firm, P.C.
New York, NY
*Counsel for Plaintiff*

Steven C. Stern, Esq.
Alison Cullen, Esq.
Sokoloff Stern, LLP
Carle Place, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Plaintiff Yolanda D. Tyson ("Plaintiff") brings this action against the Town of Ramapo (the "Town" or "Ramapo"), Town Supervisor Christopher P. St. Lawrence ("St. Lawrence"), Councilman Yitzchok Ullman ("Ullman"), Councilman Samuel Tress ("Tress"), Councilwoman Brendel Charles aka Brendel Logan ("Brendel"), Councilman Patrick J. Withers ("Withers"), Chief of Police of the Police Department of the Town of Ramapo ("Ramapo PD") Brad R. Weidel ("Weidel"), former Ramapo PD Chief of Police Peter F. Brower ("Brower"), and Ramapo PD Captain Thomas Cokeley ("Cokeley") (collectively, "Defendants"), alleging that Defendants discriminated against her on the basis of gender and race, in violation of 42 U.S.C. § 1983 and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, when they denied her certain benefits and accommodations after she suffered work-related injuries and when they ultimately terminated her as a Police Officer with the Ramapo PD. (*See* Am. Compl. (Dkt. No. 43).) Before the Court is Defendants' Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. Of Mot. (Dkt. No. 48).) For the following reasons, Defendants' Motion is granted in part and denied in part.

## I. Background

### A. Materials Considered

As a threshold matter, the Court considers the proper treatment of exhibits submitted by Defendants in support of their Motion. Defendants filed several exhibits along with the instant Motion To Dismiss. (*See* Decl. of Steven C. Stern, Esq. ("Stern Decl.") (Dkt. No. 49).) Exhibit A is a copy of the decision *In the Matter of the Application of Yolanda D. Tyson v. Town of Ramapo*, Index. No. 001012/2016, by the New York Supreme Court for the County of Rockland, dated April 5, 2017. (*See* Stern Decl. Ex. A.) Exhibit B is a copy of Hearing Officer William E.

Sherwood's Decision, dated May 9, 2015, *In the Matter of 207-c Application of Police Officer Yolanda Tyson* ("Section 207-c Decision"), and the "Agreed Statement of Facts" jointly submitted by the parties in that proceeding. (*See* Stern Decl. Ex. B.) Exhibit C is a copy of the January 29, 2016 and May 18, 2016 letters (respectively, "January 29, 2016 Letter" and "May 18, 2016 Letter") referenced by Plaintiff in the Amended Complaint. (*See* Stern Decl. Ex. C.) Additionally, on October 12, 2018, counsel for Defendants submitted a letter alerting the Court that the New York State Appellate Division affirmed the state trial court's determination in Plaintiff's Article 78 proceeding, and attached the Appellate Division Decision. (*See* Letter from Steven C. Stern, Esq. to Court (Dkt. No. 54); *Tyson v. Town of Ramapo*, 85 N.Y.S.3d 569 (App. Div. 2018).)

Plaintiff argues at length that the Court may not consider these exhibits because that would impermissibly convert Defendants' Motion To Dismiss into a motion for summary judgment. (Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") 5–10 (Dkt. No. 52).) Defendants correctly point out that the state court opinions and the decision of the hearing officer are matters of public record that the Court may take judicial notice of, and that the two letters are incorporated by reference into Plaintiff's Amended Complaint. (*See* Defs.' Mem. of Law in Further Supp. of Mot. To Dismiss ("Defs.' Reply") 1–2 (Dkt. No. 53).)

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). "To go beyond the allegations in the [c]omplaint would convert the . . . motion to dismiss into one for summary judgment." *Thomas v. Westchester County Health Care Corp.*,

3

232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). There are a few notable exceptions to this rule. In addition to the complaint, a court ruling on a Rule 12(b)(6) motion "may consider . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech.*, *Inc.,* 742 F.3d 42, 44 n.1 (2d Cir. 2014) (alterations and quotation marks omitted); *Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

"To be incorporated by reference, the [c]omplaint must make a clear, definite[,] and substantial reference to the documents." *Thomas*, 232 F. Supp. 2d at 275. Additionally, even if not attached or incorporated by reference, a document upon which the complaint "solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis and quotation marks omitted). Documents are "integral" where the plaintiff had to rely on their content "in order to explain what the actual unlawful course of conduct was on which the [d]efendants embarked." *Thomas*, 232 F. Supp. 2d at 276; *see also Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (finding documents were integral to the complaint where the plaintiff "relied heavily upon [them] in framing the [c]omplaint"); *Gantt v. Ferrara*, No. 15-CV-7661, 2017 WL 1192889, at *14 (S.D.N.Y. Mar. 29, 2017) (same). Additionally, "no serious question as to [the document's] authenticity can exist." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Here, Plaintiff expressly cites to the January 29, 2016 and May 18, 2016 letters related to her termination in her Amended Complaint and discusses them at some length. (Am. Compl. ¶¶ 61–64.) These letters relate to her termination, which is a matter at the core of this

case.  The letters attached as Exhibit C are thus incorporated by reference and the Court may consider them.

The Court also is entitled to take notice of matters of public records.  *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (noting that "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes"); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) ("In considering a motion to dismiss, a court is permitted to take judicial notice of public records . . . ."); *see also Hason v. Office of Prof'l Med. Conduct*, 314 F. Supp. 2d 241, 246 (S.D.N.Y. 2004) (holding that court may consider state administrative decisions in ruling on a Rule 12(b)(6) motion).  The two state court opinions related to Plaintiff's termination attached as Exhibit A and by Plaintiff's October 12, 2018 letter, (Dkt. No. 54), and the decision of the hearing officer related to Plaintiff's application for benefits under Section 207-c of the General Municipal Law ("GML"), attached as Exhibit B, are matters of public record and the Court may consider them.

However, in taking judicial notice of such public records, the Court does so only to establish "the fact of such litigation," not for the truth of the matters asserted in each proceeding. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings." (quotation marks omitted)); *see also Roth*, 489 F.3d at 509 ("If the court takes judicial notice, it does so in order to determine *what* statements [a document] contained—but *again not for the truth of the matters asserted*." (quotation marks omitted)).  For these reasons, the Court may consider Defendants' Exhibits.[1]

---

[1]  Defendants also urge the Court to consider the "Stipulated Facts" presented to the hearing officer.  (Defs.' Reply 2.)  However, public records may not be considered for the truth of the matters asserted therein.  *See Global Network Commc'ns, Inc*, 458 F.3d at 157.  The cases

B.  Factual Background

The facts recounted below are taken from Plaintiff's Amended Complaint and are assumed to be true for purposes of resolving the Motion.  Where relevant, the Court also recounts facts stated in the two state court opinions related to Plaintiff's termination, *In the Matter of the Application of Yolanda D. Tyson*, Index. No. 001012/2016 and *Tyson*, 85 N.Y.S.3d 569, the state hearing officer's decision related to Plaintiff's application for benefits under Section 207-c (Section 207-c Decision), and the January 29, 2016 and May 18, 2016 letters.

Plaintiff identifies as an African-American female.  (Am. Compl. ¶ 16.)  Prior to being a Police Officer with the Ramapo PD, Plaintiff was employed by the New York City Police Department ("NYPD").  (*Id.* ¶ 17.)  She was hired by the NYPD in 2015 and assigned to attend the Police Academy.  (*Id.* ¶ 18.)  After she graduated from the NYPD Police Academy, she applied for a job with Ramapo PD.  (*Id.* ¶ 19.)  In February 2006, Plaintiff was appointed as a Police Officer with the Ramapo PD.  (*Id.* ¶ 20.)

Plaintiff alleges that on January 31, 2012, she was involved in an on-duty accident with her department vehicle.  (*Id.* ¶ 27.)  On February 29, 2012, the Town and Brower approved Plaintiff's application to receive Section 207-c benefits, related to arm, shoulder, hip, neck, and back injuries for the January 2012 accident.  (*Id.* ¶ 28.)

---

Defendants cite in support of their argument are inapposite here because they involve hearing records that were incorporated by reference as integral to the plaintiff's case, *see, e.g., Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 605 (S.D.N.Y. 2015) (holding that a hearing officer decision in a teacher's state disciplinary hearing could be considered on a Rule 12(b)(6) motion because it was integral to the plaintiff's claim), *aff'd*, 665 F. App'x 49 (2d Cir. 2016); *Morey v. Somers Cent. Sch. Dist.*, No. 06-CV-1877, 2007 WL 867203, at *4 (S.D.N.Y. Mar. 21, 2007) (holding that court could "consider the records of state administrative proceedings . . . and any prior related court decisions" because it was integral to the plaintiff's claim), whereas the Court considers the hearing decision here as a public record.  The adjudication of Plaintiff's Section 207-c benefits and whether her injuries were related to each other, is not integral to the Court's consideration of her discrimination claims.

Plaintiff alleges that on March 16, 2012, she returned to work "Full Duty" without restrictions, even though she had not yet fully recovered.  (Am. Compl. ¶ 29.)  On March 17, 2012, Plaintiff left work due to neck pains and Dr. Kraushaar recommended that Plaintiff recover at home for approximately four weeks.[2]  (*Id*. ¶ 30.)  On April 4, 2012, the Town and Brower granted Plaintiff a light duty administrative assignment.  (*Id*. ¶ 31.)

In October 2012, the Town, Brower, and Weidel ordered Plaintiff back to work and gave her an administrative assignment despite the fact that she was still experiencing pain from the January 2012 accident.  (*Id*. ¶ 32.)  Plaintiff alleges that on January 29, 2013, she received an Interoffice Memorandum from the Town, Brower, and Weidel, through Administrative Lieutenant William Gravina ("Gravina"), outlining the conditions Plaintiff would need to fulfill to consolidate and re-acquire Section 207-c benefits.  (*Id*. ¶ 33.)

In February 2013, the Town, Brower, and Cokeley ordered Plaintiff to report home as "regular sick," and to return her firearm for safekeeping.  (*Id*. ¶ 34.)  Plaintiff alleges that during this same time period, the Town, Brower, and Cokeley accommodated another officer, Danny Jacarusco ("Jacarusco"), who is Caucasian and male, with an administrative job and did not remove his firearm.  (*Id*. ¶ 35.)

Plaintiff alleges that on April 24, 2013, she returned to "Full Duty" status.  (*Id*. ¶ 36.)  Plaintiff alleges that the Town and Brower instructed her that Dr. Gottlieb must write on her medical note that she had "no medical restrictions or limitations."[3]  (*Id*. ¶ 37.)  Plaintiff alleges that the Town "never imposed such requirements upon Caucasian officers, particularly males." (*Id*. ¶ 38.)

---

[2] Plaintiff does not explain who Dr. Kraushaar is.

[3] Plaintiff does not explain who Dr. Gottlieb is.

Shortly thereafter, Plaintiff reported sick again.  (Am. Compl. ¶ 39.)  Plaintiff alleges tht on April 26, 2013, the Town and Brower, through Gravina, advised her to "report sick for duty each scheduled work day until further notice from the department and to follow the restrictions in the duties of members on sick leave as specified in General Order 705.3 (C)."  (*Id*. ¶ 40.) Plaintiff alleges that the Town selectively enforced the sick reporting requirements against her but "did not impose such requirements upon Caucasian officers, particularly males."  (*Id*. ¶ 41.)

Plaintiff further alleges that on or about April 29, 2013, the Town and Brower, through former Ramapo Patrolman's Benevolent Association ("PBA") President Dennis Procter, notified her that the department would be scheduling her for an Independent Medical Examination ("IME") to determine her duty status and ability to return to work.  (*Id*. ¶ 42.)

Plaintiff alleges that in or around May 2013, she was subjected to an IME by the Town and Brower, and a determination was made to return her to "Full Duty" status, although she maintained that she had not recovered from the January 2012 accident.  (*Id*. ¶ 43.)  Plaintiff alleges that since February 2006, the Town did not order similarly situated Caucasian officers, particularly males, to return to "Full Duty" status if they were not fully recovered from their injuries.  (*Id*. ¶ 44.)

Plaintiff alleges that on June 16, 2013, the Town and Brower ordered her to return to work "Full Duty."  (*Id*. ¶ 45.)  Plaintiff returned to work full duty on June 17, 2013.  (*Id*. ¶ 47.) On June 18, 2013, Plaintiff re-qualified with her department issued service weapon and shotgun, even though she was not fully recovered from the injuries she sustained in the January 2012 accident.  (*Id*. ¶ 48.)  Plaintiff alleges that since February 2006 the Town did not order "similarly situated Caucasian officers, particularly males, to qualify with department issued service weapons or shotguns if not fully recovered from their injuries."  (*Id.* ¶ 49.)

Plaintiff alleges that from June through October 2013, she called out sick numerous times related to injuries sustained during the January 2012 accident but was never granted Section 207-c benefits, while similarly situated male Caucasian officers were. (Am. Compl. ¶ 50.)

Plaintiff alleges that in September 2013, she was injured taking an emotionally disturbed person into police custody. She wanted the injuries to be treated as an aggravation of the January 2012 accident with her department vehicle. (*Id*. ¶ 51.)

Plaintiff alleges that on October 29, 2013, she re-aggravated the neck and back injuries she sustained in the January 2012 accident while she was getting dressed in the locker room for her police duties. (*Id*. ¶ 52.)

On November 5, 2013, the Town and Brower denied Plaintiff's request for the October 29, 2013, injuries to be treated as a re-aggravation related to the January 31, 2012 accident for approval Section 207-c benefits. (*Id*. ¶ 53.) Plaintiff alleges that since February 2006, the Town has "never" denied Caucasian officers requests for Section 207-c benefits under similar circumstances (*Id*. ¶ 54.)

On September 22, 2014, Plaintiff had lower-back surgery. (*Id*. ¶ 55.) Plaintiff alleges that on October 2, 2014, the Town, Brower, and Cokeley, through Sergeant Blaine Howell ("Howell"), "ordered her to report to work within a few weeks after her lower back surgery." (*Id*. ¶ 56.) The Town and Cokeley completed forms for Plaintiff to obtain Section 207-c benefits for the lower back surgery she had undergone. (*Id*. ¶ 57.) Plaintiff alleges that upon completion, the Town and Cokeley ordered Howell to escort Plaintiff out of the building. (*Id*. ¶ 58.)

Plaintiff alleges that sometime between May and July 2015, she applied for a tax-free GML 207-c Disability Retirement Pension. (*Id.* ¶ 59.) On May 9, 2015, the State Hearing Officer upheld the denial of Section 207-c benefits related to Plaintiff's October 2013 injury,

because Plaintiff had previously voluntarily withdrawn her request for a hearing regarding the October 2013 injury, and stated that she understood she may not file subsequent applications, and that the denial of benefits in connection with the October 2013 incident would be final and binding upon her. (Section 207-c Decision 1–3.)

Plaintiff alleges that on December 16, 2015, the New York State Workers Compensation Board approved her application for benefits, finding 70 percent loss in wage earning capacity. (Am. Compl. ¶ 60.)

Plaintiff alleges that on January 29, 2016, she received a letter from the Town, St. Lawrence, Ullman, Tress, Brendel, and Withers, threatening to terminate her employment on February 29, 2016 pursuant to Civil Service Law Section 71. (*Id.* ¶ 61.) The letter is dated January 28, 2016, and states in relevant part:

> In that you have been absent from your Town position of Police Officer for over one year by reason of your workers' compensation leave, this is to advise you pursuant to Section 71 of the New York Civil Service Law and a resolution of the Town Board/Police Commission, that your workers' compensation leave will end and your employment with the Town of Ramapo will terminate on Monday, February 29, 2016 . . . . If you recover from your disability in the future, you have a right under Section 71 of the Civil Service Law to apply to the Rockland County Department of Personnel within one year of the end of your disability for a medical examination to determine your fitness to return to work. If you are fit to return to work, you will be considered for reinstatement to your position, if vacant, or to a similar position . . . .

(January 29, 2016 Letter 1.)

Plaintiff alleges that on May 18, 2016, she received another letter from the Town, St. Lawrence, Ullman, Tress, Brendel, and Withers, threatening to terminate her employment on June 24, 2016, under Civil Service Law Section 71. (Am. Compl. ¶ 63.) The letter was identical to the January 29, 2016 Letter in all material respects. (*See* May 18, 2016 Letter.) Plaintiff alleges that since February 2006, the Town, St. Lawrence, Ullman, Tress, Brendel, and Withers,

have never sent such a threatening letter to terminate a male Caucasian officer's employment under Civil Service Law Section 71.  (Am. Compl. ¶¶ 62, 64.)

Plaintiff alleges that on June 20, 2016, the Town and Weidel ordered her to report to the stationhouse and turn over all department issued equipment, (*id*. ¶ 65); which she did on June 22, 2016, (*id*. ¶ 66.)  Plaintiff alleges that on June 24, 2016, the Town, St. Lawrence, Ullman, Tress, Brendel, and Withers terminated her employment.  (*Id*. ¶ 67.)

Plaintiff filed an Article 78 petition on July 7, 2016, seeking to annul her termination on the grounds that it was arbitrary and capricious.  (*In the Matter of the Application of Yolanda D. Tyson*, Index. No. 001012/2016 at 2.)  The court granted the Town's motion to dismiss on April 4, 2017, holding that plaintiff's termination was proper under Civil Service Law Section 71 and a Memorandum of Agreement ("MOA") the Town signed with the Ramapo PBA because Plaintiff failed to offer "any evidence to support a claim, that the termination was not proper, or that she is fit to return to her position and perform her duties."  (*Id*. at 7.)  The Appellate Division affirmed this decision on October 10, 2018, agreeing that Plaintiff "failed to state a cause of action with respect to her allegation that the respondents' determination to terminate her employment pursuant to Section 71 and the MOA was arbitrary and capricious, an abuse of discretion, in violation of lawful procedure, or affected by an error of law."  *Tyson*, 85 N.Y.S.3d at 570.

Plaintiff alleges the Town, St. Lawrence, Ullman, Tress, Brendel, and Withers terminated her "despite having actual and/or constructive notice that she was treated differently due to her race and gender."  (Am. Compl. ¶ 67.)  Plaintiff alleges the Town, St. Lawrence, Ullman, Tress, Brendel, Withers, Weidel, Brower, and Cokeley, "did nothing to protect her employment rights." (*Id*. ¶ 68.)

Plaintiff alleges that since 2006, the Town, St. Lawrence, Ullman, Tress, Brendel, Withers, Weidel, Brower, and Cokeley, had actual or constructive notice that the following Caucasian officers, particularly males, (1) received Section 207-c benefits without legal challenge, (2) were never carried as "regular sick," (3) were afforded the opportunity to stay at home, some for periods of more than ten years without legal challenge, (4) received light duty assignments or were reasonably accommodated, some for periods of more than ten years without legal challenge, and (5) were not threatened with termination or terminated under Civil Service Law Section 71: Neil Sweeney (Male); Denise Dougherty (Female); Robert Chapman (Male); Mark Armstrong (Male); Modestino Giusto (Male); Baile Glauber (Female); John Youngman (Male); James Curley (Male); Danny Jacaruso (Male); Patrick Reynar (Male) and John Paolucci (Male). (*Id.* ¶¶ 21–25.)

Plaintiff alleges that since 2006, the Town, St. Lawrence, Ullman, Tress, Brendel, Withers, Weidel, Brower, and Cokeley, "have never threatened with termination or terminated a Caucasian officer, particularly males, under Civil Service Law Section 71." (*Id.* ¶ 26.)

Plaintiff alleges the Town, St. Lawrence, Ullman, Tress, Brendel, Withers, Weidel, Brower, and Cokeley "interfered with her property rights as a civil servant and her individual civil rights causing her emotional distress and substantial economic losses due to, decreased take home pay, decreased pension valuation and inability to recover entitled tax free benefits." (*Id.* ¶ 69.)

C.  Procedural History

Plaintiff filed her Complaint on July 3, 2017, (Compl. (Dkt, No. 1)), and refiled her Complaint on July 5, 2017 to correct am ECF filing deficiency, (Compl. (Dkt. No.18).)  On

August 7, 2017, the Court granted Defendants' extension request to respond to the Complaint. (Dkt. No. 34.)

On September 5, 2017, counsel for Defendants submitted a pre-motion letter to the Court requesting permission to file a Motion To Dismiss. (*See* Letter from Steven C. Stern, Esq. to Court (Dkt. No. 35).) On September 18, 2017, counsel for Plaintiff submitted a letter opposing Defendants' request. (*See* Letter from Eric Sanders, Esq., to Court (Dkt. No. 37).) On October 3, 2017, counsel for Plaintiff resubmitted the letter, (*see* Letter from Eric Sanders, Esq., to Court (Dkt. No. 39)), per the Court's instruction, in order to comply with the Court's Individual Practices, (Dkt. No. 38).

On December 14, 2017, the Court held a pre-motion conference and instructed Plaintiff to file an Amended Complaint. (*See* Dkt. (minute entry for Dec. 14, 2017).) Plaintiff filed her Amended Complaint on January 5, 2018. (*See* Am. Compl.)

On January 19, 2018, counsel for Defendants again submitted a pre-motion letter to the Court requesting permission to file a Motion To Dismiss. (*See* Letter from Steven C. Stern, Esq. to Court (Dkt. No. 44).) Plaintiff failed to respond to this letter by the deadline set by the Court. (Dkt. No. 46.) On February 1, 2018, the Court granted Defendants leave to file a Motion To Dismiss and set a motion briefing schedule. (Dkt. No. 47.)

On March 5, 2018, Defendants filed the instant Motion To Dismiss and accompanying papers. (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 51); Stern Decl.) On April 5, 2018, Plaintiff filed her Opposition to Defendants' Motion to Dismiss. (*See* Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 52).) Defendants filed their Reply in Further Support of their Motion To Dismiss on April 24, 2018. (*See* Defs.' Reply.) On October 12, 2018, counsel for Defendants submitted a letter

alerting the Court that the New York State Appellate Division affirmed the state trial court's determination in Plaintiff's Article 78 proceeding, holding Plaintiff's termination was legal. (*See* Letter from Steven C. Stern, Esq. to Court (Dkt. No. 54).)

## II. Discussion

### A. Standard of Review

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

As noted, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted).

### B. Statute of Limitations

Defendants argue that most of Plaintiff's claims are time-barred because a three-year statute of limitations applies to § 1983 claims and a one-year and ninety-day statute of limitations applies to NYSHRL § 296 claims. (Defs.' Mem. 7.) The Court agrees in part.

For § 1983 actions, "the applicable limitations period is found in the general or residual state statute of limitations for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). "In New York, the personal injury statute of limitations that applies to [§]

1983 actions is three years." *Id.* (brackets omitted); *see also Fairley v. Collins*, No. 09-CV-6894, 2011 WL 1002422, at *3 (S.D.N.Y Mar. 15, 2011) (same); *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 322 (S.D.N.Y. 2015) (same); N.Y. C.P.L.R. § 214(5). In employment discrimination cases, a § 1983 claim accrues "the date the allegedly discriminatory decision was made and communicated to the employee." *Economu v. Borg–Warner Corp.*, 829 F.2d 311, 315 (2d Cir. 1987) (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (citation and alterations omitted)); *Phillips v. City of New York*, 304 F. Supp. 3d 305, 311 (S.D.N.Y. 2018) (same); *see also Flaherty v. Metromail Corp.*, 235 F.3d 133, 137–38 (2d Cir. 2000) (holding that the statute of limitations on the plaintiff's § 1983 employment discrimination claim began to run when he received notice of his termination).

"NYSHRL claims are governed by a three-year statute of limitations." *Nokaj v. N. E. Dental Mgmt., LLC*, No. 16-CV-3035, 2019 WL 634656, at *7 (S.D.N.Y. Feb. 14, 2019) (citing *Kassner v. 2nd Ave. Delicatessen Inc*., 496 F.3d 229, 238 (2d Cir. 2007)); *see also* N.Y. C.P.L.R. § 214(2). NYSHRL "employment discrimination claim[s] accrue[] on the date that an adverse employment determination is made and communicated to the plaintiff." *Milani v. Int'l Bus. Machines Corp., Inc*., 322 F. Supp. 2d 434, 451 (S.D.N.Y. 2004), *aff'd* 137 F. App'x 430 (2d Cir. 2005); *Holcombe v. U.S. Airways Grp., Inc*., 976 F. Supp. 2d 326, 351 (S.D.N.Y. 2013) (same).[4]

---

[4] Defendants are incorrect that a one-year and ninety-day statute of limitations applies to Plaintiffs NYSHRL claims—the New York State provisions they cite are inapposite. (Defs.' Mem. 7 (citing N.Y. Town Law § 67; Gen. Mun. Law § 50-i.))

Thus, a three-year statute of limitations applies to all of Plaintiff's claims.[5]  Because this action was filed on July 3, 2017, all of Plaintiff's claims that pre-date July 3, 2014 are time-barred.  This includes the October 2012 order that Plaintiff return to work and perform an administrative assignment, the February 2013 order that Plaintiff report home without her firearm, Plaintiff's April 24, 2013 return to full duty, Plaintiff being advised on April 26, 2013 to report sick until further notice, Plaintiff being sent for an IME in May 2013, Plaintiff being ordered to return to work and qualify with her firearm on June 16, 2013, the denial of Section 207-c benefits to Plaintiff for the period between June and October 2013, and Brower's denial of Plaintiff's claim of Section 207-c benefits on November 5, 2013.  (*See* Am. Compl. ¶¶ 32, 34, 40, 42–43, 45–48, 50, 53.)  Thus, the Court will only consider the claims raised by Plaintiff that occurred after July 3, 2014.

C. Collateral Estoppel

Defendants also argue that collateral estoppel bars Plaintiff from re-litigating the issues decided by the State hearing officer and the Article 78 court, because "[a]lthough [P]laintiff did not raise discrimination claims in those proceedings, she cannot contest the fact that she voluntarily withdrew and waived her challenge to the denial of Section 207-c benefits.  She cannot challenge the Article 78 court's findings that her termination was legal and proper."  (Defs.' Mem. 15–16.)

"The Full Faith and Credit Act, 28 U.S.C. § 1738, . . . requires the federal court to give the same preclusive effect to a state-court judgment as another court of that State would give." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (citation and quotation

---

[5] Plaintiff does not argue, and the Court is not aware, of any reason that the statute of limitations should be tolled.

marks omitted); *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) ("A federal court must apply the collateral estoppel rules of the state that rendered a prior judgment on the same issues currently before the court."). In this case, New York is the relevant state as Defendants contend that New York courts' opinions and a New York administrative hearing officer's judgment bar Plaintiff's discrimination and retaliation claims. *See Colon v. Coughlin*, 58 F.3d 865, 869 n.2 (2d Cir. 1995) ("We . . . look to New York law to determine the effect of [the plaintiff]'s Article 78 proceeding."). "Under New York law, collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same." *LaFleur*, 300 F.3d at 271 (citation and quotation marks omitted). "When it applies, collateral estoppel divests a federal district court of subject matter jurisdiction over the precluded issue." *Sank v. City Univ. of N.Y.*, No. 10-CV-4975, 2011 WL 5120668, at *3 (S.D.N.Y. Oct. 28, 2011). New York courts apply the doctrine "if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon*, 58 F.3d at 869; *see also Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005) (same). It must be "quite clear that these requirements have been satisfied, lest a party be precluded from obtaining at least one full hearing on his or her claim." *Colon*, 58 F.3d at 869 (quotation marks omitted). Thus, "[t]he party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Id.* However, "[t]he doctrine of collateral estoppel 'is grounded on concepts of fairness and should

not be rigidly or mechanically applied.'" *LaFleur*, 300 F.3d at 271 (quoting *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634, 636 (N.Y. 1990)).

As a result of this doctrine, plaintiffs have been precluded from relitigating employment discrimination claims in federal court where state courts have concluded that no probable cause existed to believe the plaintiffs were subjected to discrimination. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466–67 (1982) (holding that the plaintiff was barred from litigating his discrimination claim in federal court because "the Appellate Division of the New York Supreme Court . . . issued a judgment affirming the decision" of the NYSDHR Appeals Board, which found that the plaintiff's termination was "not the product of the discrimination that he had alleged"); *Yu v. Knighted LLC*, No. 15-CV-9340, 2017 WL 666118, at *7 (S.D.N.Y. Feb. 16, 2017) (holding that the plaintiff was collaterally estopped from bringing discrimination and retaliation claims under Title VII and the ADEA in federal court, where he previously brought employment discrimination claims in state court under state law because "the elements of a successful employment discrimination claim are identical under both federal and state law"); *Richardson v. City of New York*, No. 97-CV-7676, 2004 WL 325631, at *1 (S.D.N.Y. Feb. 20, 2004) ("[W]here an Article 78 petition seeks annulment of a[n] employment disciplinary decision on the ground that it was discriminatory or retaliatory, a determination by the state courts that the decision was supported by substantial evidence necessarily implies rejection of the claim that the termination was discriminatory and retaliatory and thus forecloses a similar contention in a subsequent federal action." (alterations and quotation marks omitted) (emphasis added)).

However, the Court is not aware of, and Defendants do not cite to, a case in which a plaintiff was collaterally estopped from bringing discrimination claims in federal court where the

state courts never considered whether the plaintiff was the victim of discrimination. Here, the state hearing officer considered whether Plaintiff's injuries were related to each other in a way that allowed Plaintiff to qualify for Section 207-c benefits. (*See generally* Section 207-c Decision.) For example, the state courts considered whether Civil Service Law Section 71, titled "Reinstatement after separation for disability," and the Town MOA with the PBA were applicable to Plaintiff's termination. *See generally In the Matter of the Application of Yolanda D. Tyson*, Index. No. 001012/2016; *Tyson*, 85 N.Y.S.3d at 569. Neither the state hearing officer, the New York Supreme Court, nor the Appellate Division considered whether discrimination played any role in any of the actions taken by Defendants with respect to Plaintiff. The elements of § 1983 and NYSHRL claims were in no way addressed by the state hearing officer or the state courts.

"Here, Plaintiff's claims under [§] 1983 . . . and analogous provisions of the . . . NY[S]HRL likely will hinge on whether race [or gender] . . . was a motivating factor in the [Defendants'] decision to terminate her . . . . With respect to this inquiry, a finding by the state court that the decision to terminate . . . was rational does not lead inexorably to the conclusion that race was not a motivating factor in the [Defendants'] decision to terminate her." *Garrido v. N.Y.C. Dep't of Edu.*, No. 16-CV-9464, 2018 WL 1664793, at *4–5 (S.D.N.Y. Mar. 15, 2018) (citations, alterations, and quotation marks omitted). "Similarly, finding that the suspension decision was discriminatory would not necessarily contradict the Article 78 court's determination that the suspension was not arbitrary. This is particularly true where, as here, . . . [P]laintiff did not raise the discrimination claims before the state court, and so there is no reason to conclude that the prior court rejected these claims in finding that the disciplinary action was rational." *Id*. at *5 (citations and quotation marks omitted).

Because Plaintiff did not raise her discrimination claims in the state proceeding, and because there is no other indication that the state court considered and rejected these claims, collateral estoppel does not preclude Plaintiff from making a discrimination challenge in the instant case.

### D. Merits Analysis

Plaintiff brings § 1983 and NYSHRL § 296 claims alleging that she suffered employment discrimination on the basis of race and gender because she is an African-American woman. (Am. Comp. ¶¶ 70–83.)[6] Defendants argue that Plaintiff fails to state a prima facie equal protection claim under § 1983 because she was not qualified to hold the position of Police Officer, (Defs.' Mem. 8–9), she did not allege adverse employment actions other than her termination, (*id*. at 10–12), her termination did not occur under circumstances that give rise to an inference of discrimination, (*id*. at 12–14), and Defendants had legitimate, non-discriminatory reasons for their actions, (*id*. at 14–16). Defendants also argue that the individual Defendants should be dismissed from the case because Plaintiff has failed to allege their personal involvement, (*id*. at 16–18), and that the individual Defendants are entitled to qualified immunity, (*id*. at 18).

---

[6] Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (same). Plaintiff's Amended Complaint does not specify which substantive right she is attempting to vindicate via Section 1983. Defendants assume Plaintiff brings a Fourteenth Amendment Equal Protection Clause claim through § 1983. (Defs.' Mem. 7–9.) And even though Plaintiff's Complaint does not expressly state she is relying on the Fourteenth Amendment, in her opposition to the motion, Plaintiff identifies the standard that is applicable to equal protection claims as the standard that should apply to this case. (Pl.'s Mem. 12–13.) Courts in the Second Circuit have analyzed employment discrimination claims like Plaintiff's under the Equal Protection Clause—and the Court thus treats Plaintiff's claims under § 1983 as Fourteenth Amendment equal protection claims.

1.  Legal Standard

Race and gender discrimination claims under § 1983 and NYSHRL § 296 are subject to the same standard as Title VII claims. *See Brennan v. City of White Plains*, 67 F. Supp. 2d 362, 372 (S.D.N.Y. 1999). "The core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of . . . the Equal Protection Clause." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). To state an employment discrimination claim under § 1983 and NYSHRL § 296, a plaintiff must allege that (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) that action took place under circumstances giving rise to an inference of discrimination. *See Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (applying *McDonnell Douglas* burden-shifting framework to analyze § 1983 and NYSHRL § 296 employment discrimination claims) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *Roman-Malone v. City of New York*, No. 11-CV-8560, 2013 WL 3835117, at *4 (S.D.N.Y. July 25, 2013) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)) (same).[7]

"Because New York courts require the same standard of proof for claims brought under the NY[S]HRL as for those brought under Title VII, [the Court will] analyze these claims in

_____

[7] To state a claim under the Equal Protection Clause, a plaintiff may either "alleg[e] discrimination based on membership in a protected class," or allege a "class of one" claim. *See Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008); *T.K. v. N.Y.C. Dep't of Educ.*, 779 F. Supp. 2d 289, 316 (E.D.N.Y. 2011) ("[An equal protection] claim may be the result of membership in a protected class or result from an individual being a member of a class of one."). The Supreme Court has rejected class of one equal protection claims in the public employment context. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008). Here, Plaintiff alleges she was treated differently on the basis of race and gender, and Defendants do not contest that she is the member of these protected classes. The Court thus treats Plaintiff's claims as protected-class theory claims.

tandem." *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 (2d Cir. 1999); *see also Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010) ("We review discrimination claims brought under the NYSHRL according to the same standards that we apply to Title VII discrimination claims."); *Shands v. Lakeland Central School Dist.*, No. 15-CV-4260, 2018 WL 3315738, at *20 (S.D.N.Y. July 5, 2018) (stating that a plaintiff's "race and gender discrimination claim under the NYSHRL is analyzed under the same framework as her § 1983 [race and gender discrimination] claim").

"Employment discrimination claims need not contain specific facts establishing a prima facie case of discrimination." *See Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 275 (S.D.N.Y. 2010) (citation omitted). "Rather, an employment discrimination complaint 'must include only a short and plain statement of the claim that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). The Second Circuit has explained that "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). "The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but rather the alleged facts "need only give plausible support to a minimal inference of discriminatory motivation." *Id.*; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("[A] plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show

discrimination by giving rise to a plausible inference of discrimination.").  Thus, to survive a

motion to dismiss, a plaintiff need "not plead a prima facie case of discrimination,"

*Swierkiewicz*, 534 U.S. at 515, but "must plead enough facts to state a discrimination claim that

is plausible on its face," *Roman-Malone*, 2013 WL 3835117, at *4.  Courts making the

plausibility determination must do so "mindful of the elusive nature of intentional

discrimination" and the concomitant frequency by which plaintiffs must "rely on bits and pieces

of information to support an inference of discrimination, i.e., a 'mosaic' of intentional

discrimination."  *Vega*, 803 F.3d at 86 (citation, italics, and some quotation marks omitted).[8]

---

[8] Defendants correctly point out that if Plaintiff were to establish a prima facie case, her claim would be further assessed under the *McDonnell Douglas* burden-shifting framework. (Defs.' Mem. 8.)  If a plaintiff established a prima facie case of employment discrimination, the burden shifts back to the defendants, who may rebut her claim with legitimate, non-discriminatory reasons for the adverse employment action.  *See Sattar v. Johnson*, 129 F. Supp. 3d 123, 137 (S.D.N.Y. 2015), *aff'd sub nom Sattar v. United States Dep't of Homeland Sec.*, 669 F. App'x 1 (2d Cir. 2016).  "The defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (citation omitted).  For example, "an employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action."  *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001); *see also Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004) (dismissing race and gender discrimination claim of employee whose disability rendered him unable to perform job duties).  If the defendants present legitimate reasons for the employment action, the burden shifts once again to the plaintiff to plausibly allege "the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination."  *Sattar*, 129 F. Supp. 3d at 137 (citing *Patterson*, 375 F.3d at 221).

However, because a plaintiff need not make out a prima facie case at the motion to dismiss stage, because the facts alleged in a plaintiff's complaint are assumed to be true, and because in adjudicating a Rule 12(b)(6) motion a district court must confine its consideration to facts stated on the face of the complaint, Defendants cannot at this stage introduce evidence of their non-discriminatory reasons for their treatment and termination of Plaintiff's employment. The Court has already decided that Plaintiff is not collaterally estopped from bringing her discrimination claims in this case.  And although the Court considers the outcomes of those state proceedings after having taken judicial notice of them, it does not consider them for the truth of the matters asserted therein.  Courts within the Second Circuit that have applied the *McDonnell Douglas* burden-shifting framework have done so at the summary judgment stage when defendants are able to introduce evidence of their non-retaliatory reasons for the adverse

### 2. Application

Defendants do not dispute that Plaintiff is a member of protected classes. Therefore, the Court considers whether Plaintiff has plausibly alleged that she was qualified to hold the position of Police Officer, that she suffered adverse employment actions, and that the circumstances in this case give rise to an inference of discrimination.

### a. Qualification

Defendants argue that Plaintiff was not qualified to hold the position of Police Officer, because she did not "plead that she was able to return to work during the statutory period, much less that [D]efendants refused to allow her to return to work." (Defs.' Mem. 9.) Defendants point to the January 29, 2016 and May 18, 2016 letters, which instructed Plaintiff that she could apply for reinstatement within a year of her termination, but that Plaintiff failed to do so. (*Id.*) Defendants also cite the New York State Supreme Court conclusion that "[t]here is nothing in the record to suggest that [Plaintiff] is in a position to apply for reinstatement as [she] has never claimed that she is fit to return to her position and perform her duties." *In the Matter of the Application of Yolanda D. Tyson*, Index. No. 001012/2016 at 7.

However, whether Plaintiff was eligible for reinstatement under Section 71 of the Civil Service Law, (*see* January 29, 2016 Letter; May 18, 2016 Letter), and whether she was capable of returning to work after an extended medical leave, does not answer the question of whether Plaintiff was qualified for the position under equal protection jurisprudence. "To show

---

employment action at issue. *See, e.g.*, *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 124 (2d Cir. 2004) (applying M*cDonnell Douglas* burden-shifting framework to § 1983 equal protection claim at the summary judgment stage); *Weber v. City of New York*, 973 F. Supp. 2d 227, 251–58 (E.D.N.Y. 2012) (same). Defendants here cannot meet their burden of production based on the allegations in the Complaint, or any other materials that can be considered at this stage.

'qualification' . . . the plaintiff 'need not show perfect performance or even average performance.'" *Gregory v. Dal*y, 243 F.3d 687, 696 (2d Cir. 2001) (citation omitted). "Instead, she need only make the minimal showing that she possesses the basic skills necessary for performance of [the] job." *Id*. (citation and quotation marks omitted); *Slattery v. Swiss Reinsurance Am. Corp*., 248 F.3d 87, 92 (2d Cir. 2001) ("As we have repeatedly held, the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he possesses the basic skills necessary for performance of the job." (alteration, citations, and quotation marks omitted)); *Hird–Moorhouse v. Belgian Mission to United Nations*, No. 03-CV-9688, 2010 WL 3910742, at *4 (S.D.N.Y. Oct. 5, 2010) ("Plaintiff need show only that he 'possesses the basic skills necessary for performance of [the] job.'" (quoting *Slattery*, 248 F.3d at 92)). "As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Slattery*, 248 F.3d at 92; *see also Gregory*, 243 F.3d at 695–96 ("[W]hen, as in this case, the employer has retained the plaintiff for a significant period of time . . . the strength of the inference that she possesses the basic skills required for her job is heightened."). Moreover, "[t]he qualification prong [does not] . . . shift onto the plaintiff an obligation to anticipate and disprove, in [her] prima facie case, the employer's proffer of a legitimate, non-discriminatory basis for its decision." *Slattery*, 248 F.3d at 92 (italics omitted).[9] Plaintiff only needs to show that she "possesse[d] the basic skills necessary for performance of [the] job." *Owens v. N.Y.C. Housing Auth*., 934 F.2d 405, 409 (2d Cir. 1991).

---

[9] The Court notes that Defendants offer the same argument, specifically that Plaintiff was unable to return to work, as their legitimate, non-discriminatory basis for their actions. (Defs.' Mem. 14–16.)

Here, Plaintiff alleges she graduated from the NYPD Police Academy, (Am. Compl. ¶¶ 18–19), was hired by the Ramapo PD in February 2006, (*id.* ¶ 20), and worked in that position until her termination in June 2016, (*id.* ¶ 67). These assertions suffice to plead that Plaintiff was qualified for the position of Police Officer. *See Gregory*, 243 F.3d at 697 (holding that the plaintiff's allegations that her employer "retained her services for ten years and promoted her into successively higher positions" and that her employer's allegations that she lacked qualification for her position were "part of a campaign of discrimination against her," "suffice[d] to plead her qualification for the position"); *Feinerman v. T-Mobile USA*, No. 08-CV-3517, 2010 WL 331692, at *8 (S.D.N.Y. Jan. 28, 2010) (holding that plaintiff's allegation that her employer "hired her as a Regional Director, retained her in that position [for five years] . . . and gave her satisfactory performance evaluations" sufficed to plead she was qualified for the position); *Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 49–50, (S.D.N.Y. 2009) (concluding that relevant degrees, many years of employment with the employer, and positive reviews from supervisors and customers sufficed to establish plaintiff's qualification for her position). Defendants may at a later stage lay out the reasons for which Plaintiff was not fit for duty in order to proffer a legitimate, non-discriminatory basis for their actions—however, at the pleading stage, Plaintiff does not have "an obligation to anticipate and disprove . . . the employer's proffer of a legitimate, non-discriminatory basis for its decision." *Slattery*, 248 F.3d at 92.

### b. Adverse Employment Actions

Defendants next argue that only Plaintiff's termination qualifies as an adverse employment action. (Defs.' Mem. 10–12.) The Court thus considers each of Plaintiff's post-July 3, 2014 accusations for whether they constitute adverse actions.

"[A] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85 (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Terry*, 336 F.3d at 138). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (quoting *Terry*, 336 F.3d at 138). In the instant action, Plaintiff appears to set forth at least six distinct adverse employment actions that took place after July 3, 2014.

First, Plaintiff alleges she was terminated on June 24, 2016, by the Town, St. Lawrence, Ullman, Tress, Brendel, and Withers. (Am. Compl. ¶ 67.) Defendants admit that this constitutes adverse employment action, (Defs.' Mem. 10), and indeed there is not "any question that termination is an adverse employment action," *Sista v. CDC Ixis North Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006); *see also Vega*, 801 F.3d at 85 (listing termination as an example of adverse action); *Terry*, 336 F.3d at 138 (same).

Second, Plaintiff alleges that after she had surgery on September 22, 2014, the Town, Brower, and Cokeley, through Howell, on October 2, 2014, "ordered her to report to work within a few weeks after her lower back surgery." (Am. Compl. ¶¶ 55–56.) The Parties do not cite to any caselaw addressing whether being prematurely ordered to return to work following surgery constitutes an adverse employment action, and the Court is aware of only one case in which a court concluded that a plaintiff suffered an adverse employment action when she was ordered to return to work. In *Querry v. Messar*, 14 F. Supp. 2d 437 (S.D.N.Y. 1998), the plaintiff was on

sick leave after sustaining a work-related injury. *Id*. at 441–42. She was ordered to return to work and she returned to work the same day. *Id*. The Court summarily found that being "forced to work while injured" is an adverse employment action. *Id*. at 448. Unlike the plaintiff in *Querry*, however, Plaintiff does not allege that she actually went back to work after October 2, 2014. Plaintiff also fails to allege that one of the terms and conditions of employment with the Ramapo PD was being able to take any specified amount of time after surgery, and she does not allege that the amount of time she was given after her surgery varied from the usual amount of time any other Police Officer would have received. Plaintiff also does not allege that she was threatened with any adverse action if she failed to go back to work. Therefore, the October 2, 2014 order that Plaintiff return to work by itself was not an adverse employment action.

Third, Plaintiff alleges that around the time she was ordered to go back to work on October 2, 2014, the Town and Cokeley helped her fill out forms to obtain Section 207-c benefits, and that upon completion, Cokeley ordered Howell to escort Plaintiff out of the building. (Am. Compl. ¶¶ 57–58.) Plaintiff, however, does not allege that she was then actually escorted out of the building. She does not allege that anyone else saw her leaving the building. Plaintiff's conclusory allegation that Cokeley instructed Howell to escort her out of the building does not suffice to state an adverse employment action. Nor does Plaintiff explain why even being escorted out of the building was an adverse employment action. *See Abboud v. County of Onondaga*, 341 F. Supp. 3d 164, 179 (N.D.N.Y. 2018) (holding that corrections officer's removal from facility after inmate accused officer of providing him drugs did "not constitute adverse employment action because it occurred during the end of his shift, he was not disciplined, and . . . he was told that he could return to work for his next regularly-scheduled shift").

Fourth, Plaintiff alleges that sometime between May and July 2015, she applied for a tax-free GML 207-c Disability Retirement Pension.  (Am. Compl. ¶ 59.)  Plaintiff also alleges that she ultimately suffered a "decreased pension valuation."  (*Id.* ¶ 69.)[10]  Decreasing or delaying pension benefits is an adverse employment action.  *See Giacopelli v. Inc. Village of Malverne*, 829 F. Supp. 2d 131, 143 (E.D.N.Y. 2011) (holding that lowering a plaintiff's retirement benefits, lengthening the period of the payout period, and refusing him an opportunity to receive a lump-sum payment were adverse employment actions); *see also Karam v. County of Rensselaer*, No. 13-CV-1018, 2016 WL 51252, at *10 (N.D.N.Y. Jan. 4, 2016) (holding that delay in granting the plaintiff Section 207-c benefits was an adverse employment action).  Here, however, Plaintiff does not expressly state what the outcome of her GML 207-c Disability Retirement Pension application was—she does not state that this application was denied. Plaintiff does not allege what type of pension she was otherwise entitled to and whether this pension was separate from the Disability Retirement Pension.  It is not clear from Plaintiff's Complaint which pension she alleges suffered a loss in valuation—the Disability Retirement Pension, or some other unspecified pension.  Plaintiff's pleading with respect to her pension is vague and lacks specificity, and therefore fails to sufficiently allege an adverse employment action.

Finally, Plaintiff alleges that she received two letters, one on January 29, 2016 and another on May 18, 2016, from the Town, St. Lawrence, Ullman, Tress, Brendel, and Withers, "threatening" to terminate her employment  (Am. Compl. ¶¶ 61, 63.)  A "notice of discipline

---

[10] Plaintiff also alleges that on May 9, 2015, the State Hearing Officer upheld the denial of Section 207-c benefits related to Plaintiff's October 29, 2013 injury, (Section 207-c Decision 1–3), but because the October 2013 injury is outside the statute of limitations period, the Court does not consider this allegation.

issued against Plaintiff, without more, does not qualify as an adverse employment action." *Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 425 (E.D.N.Y. 2014) (holding that a notice of discipline was insufficient to constitute an adverse employment action) (quoting *Weeks v. N.Y. State Div. of Parole*, 273 F.3d 76, 86 (2d Cir. 2001). "Courts in this district have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions." *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001). The Court considers these notices in reviewing Plaintiff's allegations regarding her termination—but the sending of two termination notice letters, without more, does not constitute adverse action.

Thus, the only adverse employment action that Plaintiff has properly alleged is her termination.

### c. Inference of Discriminatory Intent

An inference of discriminatory intent "can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Absent direct evidence demonstrating discriminatory intent, "[a] plaintiff may support an inference of . . . discrimination by demonstrating that similarly situated employees [not in the protected class] were treated more favorably." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999); *see also Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (holding that to establish disparate treatment, a plaintiff must allege that "she

was similarly situated in all material respects to the individuals with whom she seeks to compare herself" (citation omitted)).

"To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). And to be similarly situated in "all material respects" in the context of the Complaint, Plaintiff must "show that similarly situated employees who went undisciplined engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000); *see also McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("[W]here a plaintiff seeks to establish [her] minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination."); *Taylor v. Seamen's Soc'y for Children*, No. 12-CV-3713, 2013 WL 6633166, at *14 (S.D.N.Y. Dec. 17, 2013) ("What constitutes 'all material respects' varies, of course, from case to case, but the plaintiff and those she maintains were similarly situated must have been subject to the same workplace standards," which "requires a reasonably close resemblance of facts and circumstances" (alterations and some quotation marks omitted) (quoting *Graham*, 230 F.3d at 40)). Moreover, although, "[a]t the motion to dismiss stage" evidence of similarly situated comparators "is not necessary[,] . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011); *see also Watson v. Geithner*, Nos. 09-CV-6624, 10-CV-3948, 10-CV-7282, 2013 WL 5420932, at * 10 (S.D.N.Y. Sept. 27, 2013) ("Whether employees are similarly situated is ordinarily a question of fact; however, if

there are many distinguishing factors between plaintiff and the comparators, the court may conclude as a matter of law that they are not similarly situated." (citation and quotation marks omitted)). "Thus, well-pled facts showing that the plaintiff has been treated differently from others similarly situated remains is an essential component of such a claim and conclusory allegations of selective treatment are insufficient to state an equal protection claim." *Mosdos Chofetz Chaim*, 815 F. Supp. 2d at 698 (citation, quotation marks, and alterations omitted).

Here, Plaintiff alleges that since 2006, the Town, St. Lawrence, Ullman, Tress, Brendel, Withers, Weidel, Brower, and Cokeley had actual or constructive notice that certain Caucasian, mostly male, officers: (1) received Section 207-c benefits without legal challenge, (2) were never carried as "regular sick", (3) were afforded the opportunity to stay at home, some for periods of more than ten years without legal challenge, (4) received light duty assignments or were reasonably accommodated, some for periods of more than ten years without legal challenge, and (5) were not threatened with termination or terminated under Civil Service Law Section 71. (Am. Compl. ¶¶ 21–25 (listing names of specific officers).) It is true that Plaintiff does not offer details about individual officers, for example, how long they were on sick leave, what type of benefits they obtained, and whether they suffered any other adverse employment actions short of being terminated. However, "[a]t the motion to dismiss stage," evidence of similarly situated comparators "is not necessary." *Mosdos*, 815 F. Supp. 2d at 698. A plaintiff need only allege sufficient facts from which "a jury could ultimately determine that the comparators are similarly situated." *Id.* Plaintiff need "not plead a prima facie case of discrimination," *Swierkiewicz*, 534 U.S. at 515, but only "enough facts to state a discrimination claim that is plausible on its face," *Roman-Malone*, 2013 WL 3835117, at *4. "Although Defendants may ultimately be able to show that [Plaintiff's] comparators were not similarly situated . . . or that they did not have

discriminatory intent, these questions should not be resolved at the pleadings stage." *Kunik v. N.Y.C. Dep't of Educ.*, No. 15-CV-9512, 2017 WL 4358764, at *9 (S.D.N.Y. Sept. 29, 2017). In the instant case, Plaintiff has named several individual comparators and alleged that they were similarly situated to her in at least that they stayed home from work and required light duty assignments for significant periods of time, but were nevertheless not disciplined or terminated. The Court thus finds that Plaintiff has, albeit barely, pled sufficient facts to give rise to a plausible inference of discrimination based on race and gender. *See id.* (denying motion to dismiss where the plaintiff identified comparators by name and alleged they were part of the same department at work); *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495 (E.D.N.Y. 2016) (denying motion to dismiss where plaintiff identified one comparator by name and alleged he was subject to the same supervisor).

Therefore, Plaintiff has adequately pleaded § 1983 and NYSHRL § 296 claims based on race and gender discrimination, but only with respect to her termination. All other alleged conduct is either time barred or does not, as pleaded, constitute adverse employment action.

### 3. Personal Involvement Under § 1983

Defendants also argue that the individual Defendants should be dismissed from the case because Plaintiff has failed to allege their personal involvement as is required to state a claim under § 1983. (Defs.' Mem. 16–18.)

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citation omitted). "A complaint based on a violation under § 1983 that does not allege the personal involvement of a defendant fails as a matter of law." *Muhammad v. Jenkins*, No. 12-CV-8525, 2013 WL 5225573, at *7 (S.D.N.Y. Sept. 13, 2013) (citation and quotation marks

omitted). Where the officer is a supervisor, at a minimum, "liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit held that:

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Id*. at 873.

The Second Circuit has not yet definitively decided which of the Colon factors remains a basis for establishing supervisory liability in the wake of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id*. at 1949. Some courts have questioned the continuing applicability of these factors based upon the heightened pleading requirements set forth in *Iqbal*. *See, e.g.*, *Bellamy v. Mount Vernon Hosp*., No. 07-CV-1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal*'s muster"), *aff'd* 387 F. App'x 55 (2d Cir. 2010). However, the Second Circuit has not yet ruled on the issue. *See Carpenter v. Apple*, No. 15-CV-1269, 2017 WL 3887908, at *9 (N.D.N.Y. Sept. 5, 2017) (citing *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014)) ("We have not yet determined the contours of the supervisory liability test . . . after *Iqbal*." (alterations omitted) collecting cases)). Notwithstanding the Second Circuit's silence, the majority of courts considering the issue have determined that "even

after . . . *Iqbal*, these categories supporting personal liability of supervisors still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated." *Hernandez v. Goord*, No. 01-CV-9585, 2013 WL 2355448, at *7 (S.D.N.Y. May 29, 2013) (citations and quotation marks omitted); *see also Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*); *Manning v. Griffin*, No. 15-CV-3, 2016 WL 1274588, at *12 (S.D.N.Y. Mar. 31, 2016) (holding that the *Colon* factors "remain relevant" only "to the extent that" the type of conduct sufficient for supervisory liability under *Colon* "could serve as conduct that supports a theory of direct liability"). The Court will therefore assume, for purposes of this Opinion, that all *Colon* factors remain valid. *Phillip v. Schriro*, No. 12-CV-8349, 2014 WL 4184816, at *4 (S.D.N.Y. Aug. 22, 2014) ("[U]nless or until the Second Circuit or Supreme Court rule otherwise, this [c]ourt agrees with the courts that have held that the *Colon* factors still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated." (quotation marks omitted)).

Because Plaintiff's termination is the only plausibly pleaded adverse employment action, the inquiry turns to which of the individual Defendants, if any, were personally involved in Plaintiff's termination. Plaintiff alleges that on January 29, 2016 and May 18, 2016, she received letters from the Town, St. Lawrence, Ullman, Tress, Brendel, and Withers, threatening to terminate her employment. (Am. Compl. ¶¶ 61, 63.) Both letters are indeed addressed to her from Ullman, Withers, Brendel, Tress, and St. Lawrence, and both are signed by St. Lawrence on behalf of the Town Board. (*See* January 29, 2016 Letter; May 18, 2016 Letter.) Plaintiff also alleges that on June 20, 2016, the Town and Weidel ordered her to report to the stationhouse and

turn over all department issued equipment. (Am. Compl. ¶ 65.) On June 22, 2016, Plaintiff

turned over all department-issued equipment to the Town and Weidel. (*Id*. ¶ 66.) Plaintiff

alleges that on June 24, 2016, the Town, St. Lawrence, Ullman, Tress, Brendel, and Withers

terminated her employment. (*Id*. ¶ 67.) Plaintiff further alleges the Town, St. Lawrence,

Ullman, Tress, Brendel, and Withers terminated her "despite having actual and/or constructive

notice that she was treated differently due to her race and gender," (*id*.), and that since 2006, the

Town, St. Lawrence, Ullman, Tress, Brendel, Withers, and Weidel had actual or constructive

notice that the similarly-situated white male comparators Plaintiff names were not threatened

with termination or terminated, even though they were on sick leave and received light duty

assignment for extended periods of time, (*id*. ¶¶ 21–25). Plaintiff alleges that St. Lawrence,

Ullman, Tress, Brendel, and Withers actually terminated her, that Weidel processed her

termination, and that they did this knowing that Plaintiff was being treated differently based on

her race and gender.

The Court thus concludes that Plaintiff has sufficiently pleaded that St. Lawrence,

Ullman, Tress, Brendel, Withers, and Weidel directly participated in her termination. *See Pinero*

*v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 169 (E.D.N.Y. 2005) (finding the

defendant was personally involved where the plaintiff alleged that the defendant "was the

individual that signed the letter that informed [plaintiff] that she would not be reinstated" and

"was personally involved in the decision to terminate the [p]laintiff"); *Stevens v. New York*, 691

F. Supp. 2d 392, 401 (S.D.N.Y. 2009) (finding defendant was personally involved where

plaintiff alleged defendant "summoned him to the . . . meeting[] where he was terminated");

*Coleman v. B.G. Sulzle, Inc*., 402 F. Supp. 2d 403, 422 (N.D.N.Y. 2005) (finding defendant was

personally involved where plaintiff alleged defendant actually terminated him and was involved in the decision-making process leading up to the termination).

With respect to Brower and Cokeley, however, Plaintiff fails to allege any facts whatsoever that they were personally involved in her termination. Plaintiff makes specific allegations about Brower and Cokeley related to the other conduct that the Court has herein decided does not constitute adverse employment action or is time barred, for example, ordering Plaintiff to return to work, (*see* Am. Compl. ¶¶ 32, 45), denying her benefits, (*id.* ¶ 53), or ordering that she be escorted out the building, (*id.* ¶ 58). The last action by Brower that Plaintiff alleges is Brower's denial of benefits in November 2013. (*Id.* ¶ 53.) The last action by Cokeley that Plaintiff alleges is Cokeley's request to have Plaintiff escorted out of the building in October 2014. (*Id.* ¶¶ 56–58.) Plaintiff's termination occurred nearly two years later in June 2016. (*Id.* ¶ 68.) Plaintiff does not allege that any of Brower or Cokeley's actions from 2012 through 2014 impacted the decision to terminate her, or that either of them had any say in her termination. That there are other unrelated allegations against Brower and Cokeley in Plaintiff's Amended Complaint does not suffice to allege personal involvement by either one of them in connection to her termination. *See Bender v. City of New York*, No. 09-CV-3286, 2011 WL 4344203, at *3 (S.D.N.Y. Sept. 14, 2011) ("[T]o succeed on a [§] 1983 claim, a plaintiff must establish causation by showing that 'defendants participated in, or were 'moving forces' behind, the deprivation.'" (quoting *Jeffries v. Harleston*, 21 F.3d 1238, 1247 (2d Cir. 1994)); *see also Sherman v. County of Suffolk*, 71 F. Supp. 3d 332, 357 (E.D.N.Y. 2014) (dismissing claims against defendants who required the plaintiff to "perform the exercise which resulted in [his] injury, which led him to miss certain physical training, which contributed to his 'minimally acceptable' evaluation scores and his termination" based on those scores, because "no rational

38

juror could find that the [p]laintiff's termination was a 'natural and foreseeable' result of the requirement to perform a certain exercise").  Plaintiff summarily alleges that along with the Town, St. Lawrence, Ullman, Tress, Brendel, Withers, and Weidel, Brower and Cokeley "did nothing to protect her employment rights."  (*Id*. ¶ 68.)  However, Plaintiff does not even allege that Brower and Cokeley knew she was being terminated or that they could have done anything to prevent or change the Town Board decision.  *See Hagan v. City of New York*, 39 F. Supp. 3d 481, 515 (S.D.N.Y. 2014) (dismissing, for lack of personal involvement, claims against a defendant who allegedly failed to intervene to stop the plaintiff's transfer to an undesirable position and who raised initial concerns about the plaintiff's performance).

Therefore, the Court dismisses Plaintiff's § 1983 claims against Defendants Brower and Cokeley for failure to allege personal involvement.  However, Plaintiff § 1983 Equal Protection claims based on race and gender discrimination with respect to her termination survive as to the Town, St. Lawrence, Ullman, Tress, Brendel, Withers, and Weidel.

### 4.  Individual Liability Under NYSHRL § 296

The NYSHRL makes it unlawful for an employer to discriminate on the basis of, inter alia, race, creed, color, or sexual orientation.  *See* N.Y. Exec. Law § 296.  In *Patrowich v. Chemical Bank*, 473 N.E.2d 11 (N.Y. 1984), the New York Court of Appeals defined "employer" narrowly to include only an individual "shown to have any ownership interest . . . or power to do more than carry out personnel decisions made by others."  *Id*. at 13.  All that is required for individual liability to flow to an individual "employer" is that the corporate employer have carried out a predicate act of unlawful discrimination.  *See Nicholson v. Staffing Auth*., No. 10-CV-2332, 2011 WL 344101, at *3–4 (S.D.N.Y. Feb. 1, 2011).  A supervisor is an "employer" for purposes of establishing liability under the NYSHRL if that supervisor "actually

participates in the conduct giving rise to [the] discrimination." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus, Inc. v. Ellerth*, 524 U.S. 775 (1998). In addition, the NYSHRL provides that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel[,] or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). The Second Circuit has interpreted the language of § 296(6) "to mean that a defendant who *actually participates* in the conduct giving rise to a discrimination claim may be personally liable as an aider and abettor." *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003) (citation and quotation marks omitted) (emphasis added); *see also Tomka*, 66 F.3d at 1317 (holding that a co-worker who "actually participates in the conduct giving rise to a discrimination claim" was to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff); *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 687 (S.D.N.Y. 2012) ("The NYSHRL provides for the imposition of liability on individual defendants under . . . §§ 296(1) and 296(6). Thus, individual liability under § 296(1) lies only where a defendant actually participates in the conduct giving rise to discrimination, and is limited to individuals with ownership interest or supervisors, who themselves have the authority to hire and fire employees . . . Section 296(6) of the NYSHRL provides for aiding and abetting . . . . To be found liable under § 296(6), an individual need not have supervisory or hiring and firing power, but still must have actually participated in the conduct . . . ." (citation, alterations, brackets, and quotation marks omitted)).

The Court has already concluded herein that Plaintiff has adequately pleaded a violation of NYSHRL § 296 with respect to her termination. *See supra* Section II.D.2.c. Therefore, any of the individual Defendants who are "employers" or who "actually participate[d] in the conduct

giving rise to a discrimination claim," are individually liable. *Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir. 2004) (citation omitted)).

For the same reasons that the Court concluded that Plaintiff adequately alleged that St. Lawrence, Ullman, Tress, Brendel, Withers, and Weidel were personally involved, specifically that St. Lawrence, Ullman, Tress, Brendel, and Withers actually terminated Plaintiff and that Weidel processed her termination, (Am. Compl. ¶¶ 61–63, 65, 67), *see supra* Section II.D.3, the Court now also concludes that Plaintiff has plausibly pled that they "actually participated in the conduct" giving rise to Plaintiff's termination. *See Figueroa v. KK Sub II, LLC*, 289 F. Supp. 3d 426, 443–44 (W.D.N.Y. 2018) (denying motion for summary judgment where issue of fact existed as to whether defendant who was not supervisor actively contributed to the decision to terminate employee and thereby "actually participated" in the termination).

And for the same reason that the Court concluded that Plaintiff failed to allege that Brower and Cokeley were personally involved, specifically that Plaintiff fails to allege that Brower and Cokeley took any actions related to her termination, *see supra* Section II.D.3, the Court now also concludes that they did not "actually participate in the conduct" giving rise to Plaintiff's termination. Moreover, although Plaintiff alleges that Brower was the former Chief of Police, (Am. Compl. ¶ 14), and Cokeley was a Captain, (*id*. at ¶ 15), Plaintiff has alleged no facts beyond their titles that would allow the Court to determine whether they had "an ownership interest . . . or power to do more than carry out personnel decisions made by others," and were therefore "employers" under the NYSHRL. *Patrowich*, 473 N.E.2d at 13; *see also Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 437 (E.D.N.Y. 2012) (holding that female coworker did not aid and abet county employer where she did not participate in any of the actions taken against the plaintiff, and where she had no supervisory role and no control over terms and

conditions of the plaintiff's employment); *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (holding that supervisor could not be liable as employer because she did not have the authority to hire or fire the plaintiff or set the plaintiff's schedule or salary, and there was no evidence supervisor had an ownership interest in the company).

Accordingly, the Court dismisses Plaintiff's NYSHRL § 296 claims against Defendants Brower and Cokeley for failure to allege they were employers or actually participated in the conduct" giving rise to Plaintiff's termination. However, Plaintiff's NYSHRL § 296 claims based on race and gender discrimination with respect to her termination survive as to the Town, St. Lawrence, Ullman, Tress, Brendel, Withers, and Weidel.

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss with respect to Plaintiff's § 1983 and NYSHRL § 296 claims against Defendants Brower and Cokeley. Plaintiff's claims survive against all other Defendants, but only with respect to her termination. The claims that are dismissed are dismissed without prejudice.[11] Although Plaintiff has filed an Amended Complaint in this Action, this is the first adjudication on Defendants' Motion to Dismiss. *See Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *5 n.6 (S.D.N.Y. Sept. 30, 2015) ("[The] Court will afford Plaintiff an opportunity to amend if, after reviewing this Order and Opinion and the law therein, he still believes that he can plausibly state claims against Defendants."). If Plaintiff wishes to file a Second Amended Complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so

---

[11] The Court declines to consider at this time whether any Defendants are protected by qualified immunity. Defendants' qualified immunity "argument" runs to half a page and fails to meaningfully apply the qualified immunity caselaw to this case. (*See* Defs.' Mem. 18.)

within 30 days of the date of this Opinion & Order. Failure to do so will result in the dismissal of this Action with prejudice.

The Clerk of Court is respectfully direct to terminate the pending Motion, (*see* Dkt. No. 48.)

SO ORDERED.

Dated:      March 25, 2019
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE