UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
YOLANDA D. TYSON,

Plaintiff,

                                      17-CV-4990 (PMH)

-against-

THE TOWN OF Ramapo, CHRISTOPHER P. ST.
LAWRENCE, as Town Supervisor, YITZCHOK
ULLMAN, as Councilman, SAMUEL TRESS, as
Councilman, BRENDEL CHARLES aka
BRENDEL LOGAN, as Councilwoman, PATRICK
J. WITHERS, as Councilman, BRAD R. WEIDEL,
as Chief of Police, Police Department Town of
Ramapo, PETER F. BROWER, as Former Chief of
Police, Police Department Town of Ramapo and
THOMAS COKELEY, as Captain, Police
Department Town of Ramapo, each sued
individually and in their official capacities as
employees of THE TOWN OF RAMAPO,

Defendants.
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**SOKOLOFF STERN LLP**
*Attorneys for Defendants*
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 170100

*Of Counsel:*
      Leo Dorfman
      Daniel R. Axelrod

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT ........................................................................................................... 11

    I. THERE IS NO MATERIAL FACTUAL DISPUTE AS TO PLAINTIFF'S DISCRIMINATION
    CLAIM; IT FAILS AS A MATTER OF LAW AND MUST BE DISMISSED ............................... 11

        A.  Plaintiff Was Not Qualified to Hold the Position of Full-Time Police Officer ... 12

        B.  Nor Was Plaintiff Qualified for GML 207-c Benefits ......................................... 13

        C.  There Is No Evidence to Support an Inference of Discriminatory Intent ........... 14

        D.  Defendants Had Legitimate, Non-Discriminatory Reasons for Their Actions .... 20

        E.  There Is No Evidence This Straightforward Reason for Termination Was
            Pretextual .......................................................................................................... 20

    II.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ............................................ 21

CONCLUSION ........................................................................................................ 23

TABLE OF AUTHORITIES

CASES                                                                    PAGE

*Anderson v. Anheuser Busch, Inc.*,
   229 F.3d 1135 (2d Cir. 2000) ........................................................... 16

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ........................................................................ 22

*Ashcroft v. al-Kidd*,
   131 S. Ct. 2074 (2011) .................................................................... 21

*Baby v. Nassau Healthcare Corporation*,
   No. 14 Civ. 3297 (JMA)(GRB), 2017 WL 3279091 (E.D.N.Y. Feb. 6, 2017) .......... 17

*Birch Family Services, Inc. v. Wlody*,
   No. 19 Civ. 03301 (DLI)(PK), 2021 WL 2312852 (E.D.N.Y. June 7, 2021) .......... 12

*Brosseau v. Haugen*,
   543 U.S. 194 (2004) ........................................................................ 22

*City and County of San Francisco, Calif. V. Sheehan*,
   575 U.S. 600 (2015) ........................................................................ 21

*Conway v. Microsoft Corp.*,
   414 F.Supp.2d 450 (S.D.N.Y. Feb. 14, 2006) ........................................ 16

*DiMeglio v. Village of Briarcliff Manor*,
   No. 07 Civ. 3324 (LAP), 2010 WL 3664687 (S.D.N.Y. Sep. 17, 2010) ............. 13

*District of Columbia v. Wesby*,
   138 S.Ct. 577 (2018) ...................................................................... 21

*Doner-Hendrick v. New York Institute of Technology*,
   874 F.Supp.2d 227 (S.D.N.Y. 2012) ................................................... 16

*Fuentes v. Cablevision Systems Corp.*,
   No. 14 Civ. 32 (RRM)(CLP), 2016 WL 4995075 (E.D.N.Y. Sep. 19, 2016) .......... 12

*Harlan Associates v. Incorporated Village of Mineola*,
   273 F.3d 494 (2d Cir. 2001) ............................................................. 16

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ........................................................................ 21

*Humphreys v. Cablevision Systems Corp.*,
    553 F.App'x 13 (2d Cir. 2014) ................................................................ 17

*Irons v. Bedford-Stuyvesant Community Legal Services*,
    No 13 Civ. 4467 (MKB), 2015 WL 5692860 (E.D.N.Y. Sep. 28, 2015) ................................. 17

*Kobos v. Target Corp.*,
    No. 15 Civ. 5573 (DRH)(SIL), 2018 WL 2943575 (E.D.N.Y. June 12, 2018) ......................... 11

*Lane v. Franks*,
    573 U.S. 228 (2014) ...................................................................... 22

*Lizardo v. Denny's, Inc.*,
    270 F.3d 94 (2d Cir. 2001) .............................................................. 16

*Malley v. Briggs*,
    475 U.S. 335 (1986) ...................................................................... 21

*Mandell v. Cty. of Suffolk*,
    316 F.3d 368 (2d Cir. 2003) ............................................................. 15

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 93 S. Ct. 1817 (1973) ..................................................... 12

*McGuinness v. Lincoln Hall*,
    263 F.3d 49 (2d Cir. 2001) .............................................................. 16

*McKinney v. Bennett*,
    No. 06 Civ. 13486 (SCR)(MDF), 2009 WL 2981922 (S.D.N.Y. Sep. 16, 2009) ..................... 16

*McKnight v. Town of Hamburg*,
    No. 12 Civ. 1257 (LIV)(MJR), 2016 WL 11259014 (W.D.N.Y. Apr. 25, 2016) .................... 13

*Mitchell v. Shane*,
    350 F.3d 39 (2d Cir. 2003) .............................................................. 12

*Nurse v. Lutheran Medical Center*,
    854 F.Supp.2d 300 (E.D.N.Y. 2012) ....................................................... 16

*Parra v. City of White Plains*,
    48 F. Supp. 3d 542 (S.D.N.Y. 2014) ...................................................... 15

*Patterson v. City of Oneida*,
    375 F.3d 206 (2d Cir. 2004) ............................................................. 12

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ...................................................................... 21

*Plumhoff v. Rickard,*
  134 S. Ct. 2012 (2014) ............................................................................... 22

*Rommage v. MTA Long Island R.R.,*
  No. 08 Civ. 836 (DLI)(ALC), 2010 WL 4038754 (E.D.N.Y. Sep. 30, 2010) ........................ 16

*Shumway v. United Parcel Serv., Inc.,*
  118 F.3d 60 (2d Cir. 1997) .......................................................................... 16

*Smalls v. New York Hosp. Medical Center of Queens,*
  No. 13 Civ. 1257 (RRM)(CLP), 2015 WL 5437575 (E.D.N.Y. Sep. 15, 2015) ....................... 17

*Sotomayor v. City of New York,*
  862 F.Supp.2d 226 (E.D.N.Y. 2012) ................................................................ 12

*Spiegel v. Schulmann,*
  604 F.3d 72 (2d Cir. 2010) ......................................................................... 12

*Staff v. Pall Corp.,*
  233 F.Supp.2d 516 (S.D.N.Y. 2002) ................................................................. 15

*Tex. Dep't of Cmty. Affairs v. Burdine,*
  450 U.S. 248 (1981) ................................................................................ 12

*Tolan v. Cotton,*
  572 U.S. 650 (2014) ................................................................................ 22

*Watson v. Geithner,*
  No 09 Civ. 6624 (HBP), 2013 WL 5420932 (S.D.N.Y. Sep. 27, 2013) .............................. 16

*White v. Pauly,*
  580 U.S. 73 (2017) ................................................................................. 22

*Wiggins v. New York City Dep't of Correction*,
  No. 06 Civ.1946 (THK), 2008 WL 3447573 (S.D.N.Y. Aug. 12, 2008) .............................. 20

*Williams v. R.H. Donnelley, Corp.*
  368 F.3d 123 (2d Cir. 2004) ........................................................................ 13

STATUTES

42 U.S.C. § 1983 ............................................................................. 1, 11, 21

General Municipal Law § 207-c ............................................................... *passim*

iv

New York Civil Service Law § 71........................................................................... 17, 20

N.Y. Exec. Law § 296........................................................................................... 1

## PRELIMINARY STATEMENT

Plaintiff Yolanda Tyson is a former police officer for the Town of Ramapo who was terminated after she went on medical leave and did not return to work for over a year. She litigated her medical leave in a General Municipal Law § 207-c hearing and lost—the Hearing Officer found she waived all claims relating to her medical leave. She litigated her termination in an Article 78 proceeding and lost—the court found her termination was proper. Now, she brings this action, claiming race and gender discrimination by the Town, its individual Board members, and police officials. But race and gender played no role in her termination. The case must be dismissed.

By Opinion and Order of March 25, 2019, Judge Karas dismissed for various reasons all claims except for those relating to disparate treatment in Plaintiff's termination. Judge Karas ruled Plaintiff "adequately pleaded § 1983 and NYSHRL § 296 claims based on race and gender discrimination, but only with respect to her termination." (Doc. No. 55 at pg. 34.) Judge Karas gave Plaintiff a chance to file a Second Amended Complaint, but she declined. Thus, the only question left for the Court at this stage is whether there is evidence to support the claim that Plaintiff's termination was discriminatory. There isn't.

Defendants did not discriminate against Plaintiff on account of race or gender, or for any other impressible reason. Plaintiff cannot establish a *prima facie* case of discrimination because she was not qualified for the position and the circumstances of her termination do not give rise to an inference of discrimination. In any case, the Town terminated Plaintiff for a legitimate, non-discriminatory reason: her medical condition prevented her from performing the essential functions of a full-duty police officer for more than a year, and she was not entitled to GML-207 line of duty benefits because her injury occurred off-duty.

There is no cause to think the reason for Plaintiff's termination was pretextual or that

Plaintiff's race or gender played any role in the decision. Without any direct evidence of discriminatory intent, Plaintiff relies on "comparator" officers she believes were similarly situated but treated better. But, as a matter of law, these officers do not qualify as valid comparators—each officer's particular circumstances where totally different from Plaintiff. They were not similarly situated to her in any way that counts.

Furthermore, the individuals are all entitled to qualified immunity because they, as individuals, did not violate any clearly established law of which a reasonable person would have known. There is no evidence the individual defendants knew about the alleged "comparators," or that they knew anything about Plaintiff aside from the fact that she could not perform the duties of a police officer. Nor is there evidence they said or did anything that would create an inference of discriminatory animus.

## STATEMENT OF FACTS

### A.  Plaintiff Was a Police Officer With The Town of Ramapo Police Department

Plaintiff Yolanda Tyson ("Plaintiff") is a former police officer of the Town of Ramapo Police Department ("Department"), hired in February 2006. (Defs' 56.1 ¶ 1, 3.) She identifies as African-American and female. (*Id.* at ¶ 2.)

On January 31, 2012, Plaintiff was injured in an on-duty car accident with her patrol vehicle. (*Id.* at 4.) She applied for General Municipal Law § 207-c benefits. (*Id.* at ¶ 5.) GML 207-c requires that an employer pay the affected employee their full salary while the employee is out of work on GML 207-c disability leave. (*Id.* at ¶ 6.) For an officer to qualify for GML 207-c disability benefits, the disability must be the result of an injury sustained in the line of duty. (*Id.*) Then-Police Chief Brower granted Plaintiff's application. (*Id.* at ¶ 7.) On March 16, 2012, Plaintiff

returned to full duty with no restrictions, and her GML 207-c benefits terminated. (*Id.* at ¶ 8.)

On September 17, 2013, Plaintiff injured her finger on duty while restraining an emotionally disturbed person. (*Id.* at ¶ 9.) Plaintiff applied for GML 207-c benefits, and Chief Brower granted the application. (*Id.* at ¶¶ 10, 11.) On September 20, 2013, Plaintiff returned to full duty status with no restrictions, and her GML 207-c benefits terminated. (*Id.* at ¶ 12.)

### B.  On October 29, 2013, Tyson Injured Herself and Applied For Disability

On October 29, 2013, Plaintiff reported she injured her back while dressing for work in the lock room, prior to the start of her tour of duty. (*Id.* at ¶ 13.)  The injury occurred at 3:52 P.M, before her tour of duty was scheduled to begin at 4:00 P.M. (*Id.* at ¶¶ 14, 15.) Plaintiff never returned to work after that date. (*Id.* at ¶ 16.) Since that day, and to this day, Plaintiff has not been physically able to perform the essential job functions of a full-duty police officer. (*Id.* at ¶ 17.)

Plaintiff applied for GML 207-c benefits for the October 29, 2013 incident. (*Id.* at ¶ 18.) On November 5, 2013, Chief Brower denied her application, finding the October 2013 event was not a line-of-duty injury ("LODI"). (*Id.* at ¶ 19.) Chief Brower noted that Plaintiff was "not on-duty when [she] allegedly injured [her]back prior to [her] regularly scheduled work shift. Only injuries incurred while on-duty are eligible for GML 207-c Line of Duty Injury benefits." (*Id.* at ¶ 20.) On February 6, 2014, Lt. Reilly advised Plaintiff she is being carried as "sick pending LODI." (*Id.* at ¶ 21.) On April 27, 2014, Plaintiff reached 180 days of status as sick pending LODI. (*Id.* at ¶ 22.)

On June 25, 2014, Plaintiff filed an application to reacquire GML 207-c status for her January 31, 2012 accident, asserting the October 29, 2013 injury was an aggravation of the injuries sustained on duty in the January 31, 2012 accident. (*Id.* at ¶ 23.) Simultaneously, on June 25, 2014, Plaintiff withdrew her request for a hearing on the Chief's denial of her GML 207-c application for injuries on October 29, 2013. (*Id.* at ¶ 24.) On July 30, 2014, Chief Brower denied Plaintiff's

June 25, 2014 application. (*Id.* at ¶ 25.) Plaintiff appealed Chief Brower's July 30, 2014 denial of GML 207-c status. (*Id.* at ¶ 28.)

On September 5, 2014, Plaintiff was off duty and involved in a motor vehicle accident. (*Id.* at ¶ 26.) Plaintiff applied for GML 207-c benefits and was denied. (*Id.* at ¶ 27.)

On May 9, 2015, Hearing Officer Sherwood—upon a Joint Record in lieu of a hearing—upheld the denial of GML 207-c benefits from the October 29, 2013 injury. (*Id.* at ¶ 29.) Hearing Officer Sherwood found that Plaintiff had waived all claims arising from the October 2013 incident. (*Id.* at ¶ 30.) Judge Sherwood noted that, when Plaintiff withdrew her application, she understood she could not submit a subsequent application and that the denial would be final and binding upon her. (*Id.* at ¶ 31.) Tyson never appealed this determination. (*Id.*)

## C.  The Town Terminated Tyson's Employment

As of January 2016, Plaintiff had been out on sick leave without GML 207-c LODI benefits—i.e., the Town had carried her sick—for more than two years. (*Id.* at ¶ 32.) Under New York Civil Service Law and a resolution of the Town Board/Police Commission, the Town may terminate the employment of an employee who stays out on disability leave for more than one year without GML 207-c status. (*Id.* at ¶ 33.) On January 28, 2016, the Town issued to Plaintiff a letter stating:

> In that you have been absent from your Town position of Police Officer for over one year by reason of your workers' compensation leave, this is to advise your pursuant to Section 71 of the New York Civil Service Law and a resolution of the Town Board/Police Commission, that your workers' compensation leave will end and your employment with the Town of Ramapo will terminate on Monday, February 29, 2016.
>
> If you recover from your disability in the future, you have a right under Section 71 of the Civil Service Law to apply to the Rockland County Department of Personnel within one year of the end of your disability for a medical examination to determine your fitness to return to work. If you are fit to return to work, you will be considered for reinstatement to your position, if vacant, or to a similar position. If you cannot

be reinstated at that time, your name will be placed on a preferred list.

(*Id.* at ¶ 34.) Plaintiff received a second similar letter on May 18, 2016, stating her employment would be terminated as of June 24, 2016. (*Id.* at ¶ 35.) The Town Board voted to terminate Plaintiff's employment. (*Id.* at ¶ 36.)  Plaintiff's employment was terminated on June 24, 2016. (*Id.* at ¶ 37.)

On July 7, 2016, Plaintiff filed an Article 78 proceeding in New York State Supreme Court, County of Rockland, under Index No. 00101/2016, seeking to annul her termination. (*Id.* at ¶ 38.) On April 4, 2017, the court dismissed the Article 78 action, holding that Plaintiff's termination was proper under Civil Service Law § 71 and the Memorandum of Agreement. (*Id.* at ¶ 39.)

### D.  Tyson's Alleged Comparators

*Officer 1* - On October 21, 2008, Officer 1, who is male and Caucasian, sustained a deer tick bite to the right forearm. (*Id.* at ¶¶ 41-42.) He was on duty, canvassing a wooded area looking for a hunter. (*Id.* at ¶ 44.) On October 22, 2008, Officer 1 filed for 207-c benefits. (*Id.* at ¶ 45.) On December 15, 2008, Chief Brower approved the application. (*Id.* at ¶ 46.)

On May 12, 2015, Officer 1 sustained a laceration to his right index finger and a sprain to his left knee. (*Id.* at ¶ 47.) He was on-duty, attempting to arrest a subject. (*Id.* at ¶¶ 48, 49.) On May 12, 2015, Officer 1 filed for GML 207-c benefits. (*Id.* at ¶ 51.) On June 9, 2015, Chief Brower approved the application. (*Id.* at ¶ 52.)

Officer 1 never returned to full duty after this incident. (*Id.* at ¶ 53.) And he never stayed out on non-GML 207-c leave for more than one year. (*Id.* at ¶ 54.)

*Officer 2* - On September 9, 2007, Officer 2, who is male and Caucasian, sustained a strain to his right shoulder. (*Id.* at ¶¶ 55, 56.) He was on-duty, assisting with the arrest of a suspect. (*Id.* at ¶¶ 57, 58.) On September 9, 2007, Officer 2 filed for GML 207-c benefits. (*Id.* at ¶ 62.) On

October 23, 2007, Chief Brower approved the application. (*Id.* at ¶ 63.)

On November 17, 2008, Officer 2 was cleared to perform certain transitional duties. (*Id.* at ¶ 64.) Officers out on GM-207 disability may be directed to return to work to perform specific limited transition duties, sometimes assigned to Officers who are on disability leave with GML-c status. (*Id.* at ¶¶ 66, 68.) These transitional duties include, inter alia, communications duty, report writing and in house administration. (*Id.* at ¶ 69.)

Officer 2 never returned to full duty. (*Id.* at ¶ 65.) And he never stayed out on non-GML 207-c leave for more than one year. (*Id.* at ¶ 70.)

**Officer 3** - On August 20, 1990, Officer 3, who is male and Caucasian, sustained an injury to his left foot when walking into the police station. (*Id.* at ¶¶ 71, 72.)

On January 7, 1992, Officer 3 sustained an injury to his back and legs while fingerprinting a person. (*Id.* at ¶¶ 74, 75.) He alleged this injury derived from his August 1990 injury. (*Id.* at ¶ 76.)

On June 6, 2001, Officer 3 received a letter from Chairman St. Lawrence stating he was ineligible for benefits under GML 207-c. (*Id.* at ¶ 77.)

Officer 3 never stayed out on non-GML 207-c leave for more than one year. (*Id.* at ¶ 78.)

**Officer 4** - On July 17, 2007, Officer 4, who is male and Caucasian, sustained an injury to his neck while on-duty, responding to a fire alarm. (*Id.* at ¶¶ 79-82.) On July 17, 2007, he filed for GML 207-c, and Chief Brower approved the application on August 31, 2007. (*Id.* at ¶¶ 83, 84.)

On November 12, 2009, Officer 4 sustained an injury to his back, while on duty performing a vehicle stop. (*Id.* at ¶¶ 85-87.) On November 13, 2009, he filed for GML 207-c benefits. (*Id.* at ¶ 88.) On December 14, 1009, Chief Brower approved the application. (*Id.* at ¶ 89.)

On June 15, 2011, Officer 4 injured his back muscles while on-duty, participating in a taser

training. (*Id.* at ¶¶ 90-92.) On June 15, 2011, he filed for GML 207-c benefits. (*Id.* at ¶ 94.) Chief

Brower approved the application. (*Id.* at ¶ 95.)

On July 23, 2019, he was assigned to modified duty in the Records Office. (*Id.* at ¶¶ 96,

97.) He never stayed out on non-GML 207-c leave for more than one year. (*Id.* at ¶ 98.)

*Officer 5* - On May 15, 2012, Officer 5, who is male and Caucasian, injured his right knee

while on duty, participating in a rifle training course. (*Id.* at ¶¶ 99-102.) On May 15, 2012, Officer

5 filed for GML 207-c benefits. (*Id.* at ¶ 103.) Chief Brower approved the application. (*Id.* at ¶

104.)

On March 18, 2013, Officer 5 sustained another injury to his right knee while off duty

when he slipped in the parking lot, cleaning snow off his car after his tour ended. (*Id.* at ¶¶ 105-

07.) On March 19, 2013, he filed for GML 207-c benefits. (*Id.* at ¶ 108.) Chief Brower denied this

application, finding he ended his tour at 10:45 pm but slipped in the parking lot at 10:50 pm. (*Id.*

at ¶¶ 110-11.)

On June 23, 2013, Officer 5 injured his right knee while on-duty, assisting an intoxicated

prisoner into a holding cell. (*Id.* at ¶¶ 113-15.) On June 23, 2013, Officer 5 filed for GML 207-c

benefits. (*Id.* at ¶ 116.) Chief Brower approved the application. (*Id.* at ¶ 117.)

Officer 5 never stayed out without GML 207-c leave for more than one year. (*Id.* at ¶ 118.)

*Officer 6*  - On September 13, 2004, Officer 6, who is male and Caucasian, sustained an

injury to his lower back and right hip while on duty. (*Id.* at ¶¶ 119-21.) On September 17, 2004,

he filed for GML 207-c benefits. (*Id.* at ¶ 123.) On November 8, 2004, Chief Dolan approved the

application. (*Id.* at ¶ 124.)

On February 14, 2005, Officer 6 sustained an injury in a motor vehicle accident while on

duty, operating his patrol car. (*Id.* at ¶¶ 125-26.) On February 14, 2005, he filed for GML 207-c

benefits. (*Id.* at ¶ 128.)

On May 4, 2007, Officer 6 injured his left arm while on duty, responding to a firm alarm (*Id.* at ¶¶ 129-31.) On May 4, 2007, Officer 6 filed for GML 207-c benefits. (*Id.* at ¶ 132.) Chief Brower approved the application. (*Id.* at ¶ 133.)

On November 16, 2009, Officer 6 injured his head while on duty, on a call of a smoke condition in a house. (*Id.* at ¶¶ 134-36.) On November 16, 2009, Officer 6 filed for GML 207-c benefits. (*Id.* at ¶ 137.) Chief Brower approved the application. (*Id.* at ¶ 138.)

On June 9, 2010, Officer 6 injured his left eye while on duty, operating the turning target system computer. (*Id.* at ¶¶ 139-41.) On June 9, 2010, he filed for GML 207-c benefits. (*Id.* at ¶ 142.) On June 22, 2010, Chief Brower approved the application. (*Id.* at ¶ 143.)

On January 15, 2013, Officer 6 sustained an injury to his head while on duty, placing patrol equipment in his patrol vehicle. (*Id.* at ¶¶ 144-46.) On January 15, 2013, he filed for GML 207-c benefits. (*Id.* at ¶ 147.) On February 15, 2013, Chief Brower denied the application, finding: "It appears that on January 15, 2013 while performing your duty you lacerated your forehead on the passenger side door while exiting your patrol vehicle.... It appears that a physician … determined that you were fit to return to duty and that there was no disability." (*Id.* at ¶¶ 148, 149.)

On January 7, 2014, Officer 6 sustained an injury to his left shoulder while on duty, detailed to an alarm activation of a residence. (*Id.* at ¶¶ 150-53.) On January 7, 2014, he filed for GML 207-c benefits. (*Id.* at ¶ 154.) On February 12, 2014, Chief Brower approved the application. (*Id.* at ¶ 155.)

On February 16, 2016, Officer 6 injured the left side of his body while on-duty, conducting an accident investigation. (*Id.* at ¶¶ 155-58.) On February 16, 2016, he filed for GML 207-c benefits. (*Id.* at ¶ 159.) On March 31, 2016, Chief Weidel approved the application, but only for

the dates February 17, 2016 to March 1, 2016. (*Id.* at ¶ 160.)

Officer 6 stayed out on disability leave without GML 207-c status for more than one year. (*Id.* at ¶ 161.) In or around December 2019, the Town informed him that his employment would be terminated under Section 71 of the Civil Service Law. (*Id.* at ¶ 162.)   He was close to retirement at this time. (*Id.* at ¶ 163.) Pursuant to a settlement agreement with the Town, he agreed to retire from the Department in lieu of termination. (*Id.* at ¶ 164.)

*Officer 7* - On July 19, 1980, Officer 7, who is male and Caucasian, injured his right leg while on duty, arresting a suspect. (*Id.* at ¶¶ 165-68.)

On July 2, 1985, Officer 7 sustained an injury to his left hand while on duty, subduing a subject who was resisting arrest. (*Id.* at ¶¶ 169-71.)

On June 17, 1986, Officer 7 sustained an injury while on duty when a subject kicked him in his groin. (*Id.* at ¶¶ 172-74.)

On April 30, 1992, Officer 7 sustained an injury to his head and neck while on duty, responding to a burglary call. (*Id.* at ¶¶ 175-77.)

On September 27, 2007, Officer 7 applied for Performance of Duty and Accidental Disability Retirement with New York State, relating to the incident on April 30, 1992. (*Id.* at ¶ 178.) On January 13, 2009, the New York State Comptroller denied his applications. (*Id.* at ¶ 179.)

On November 14, 2010, Officer 7 sustained an injury to his left knee while on duty. (*Id.* at ¶ 181.) His tour began at 7:00 AM. (*Id.* at ¶ 182.) His injury occurred at 11:30 AM. (*Id.* at ¶ 183.) He entered the men's locker room and slipped on the floor, landing on his left knee. (*Id.* at ¶ 184.) On November 14, 2010, he filed for GML 207-c benefits. (*Id.* at ¶ 185.) On January 19, 2011, Chief Brower approved the application. (*Id.* at ¶ 186.)

Officer 7 never stayed out on non-GML 207-c leave for more than one year, except between

September 27, 2007 and January 13, 2009, while his disability retirement application was pending. (*Id.* at ¶ 187.)

**Officer 8** - On September 28, 2010, Officer 8, who is male and Caucasian, injured his neck and lower back while was on duty at the time of this incident, attempting to overtake a vehicle. (*Id.* at ¶¶ 188-91.) On September 28, 2010, he filed for GML 207-c benefits. (*Id.* at ¶ 192.) On November 5, 2010, Chief Brower approved the application. (*Id.* at ¶ 193.)

On May 1, 2013, Officer 8 sustained an injury to his right hamstring while on duty at the Ramapo firing range. (*Id.* at ¶¶ 194-96.) On May 1, 2013, he filed for GML 207-c benefits. (*Id.* at ¶ 197.) On May 24, 2013, Chief Brower approved the application. (*Id.* at ¶ 198.)

On August 1, 2017, Officer 8 sustained an injury to his right ankle while on duty, searching apartments at the scene of a fire. (*Id.* at ¶¶ 200-01.) On August 1, 2017, he filed for GML 207-c benefits. (*Id.* at ¶ 202.) On September 8, 2017, Chief Weidel denied the application, finding: "It appears that a physician at Good Samaritan Hospital determined that you were fit to return to duty and that there was no disability." (*Id.* at ¶¶ 203-04)

Officer 8 never stayed out on non-GML 207-c leave for more than one year. (*Id.* at ¶ 206.)

**Officer 9** - On January 20, 2001, Officer 9, who is male and Caucasian, sustained an injury to his back while attempting to lift his briefcase out of his locker. (*Id.* at ¶ 209.) On January 20, 2001, he filed for GML 207-c benefits. (*Id.* at ¶ 210.) On April 5, 2001, Chief Ruggiero denied the application, finding an "absence of any information which indicated that [the] injury was a result of some level of heightened risk associated with police activity." (*Id.* at ¶ 212.)

On November 4, 2008, Officer 9 injured his left shoulder, while on duty putting on a heavy leather uniform jacket in the supervisor's locker room. (*Id.* at ¶¶ 213, 217.) His tour began at 11:55 PM on November 3, 2008, and injured happened at 12:15 AM on November 4, 2008. (*Id.* at ¶¶

215-16.) On November 4, 2008, he filed for GML 207-c benefits. (*Id.* at ¶ 218.) On December 15, 2008, Chief Brower approved the application. (*Id.* at ¶ 219.)

Officer 9 never stayed out on non-GML 207-c leave for more than one year. (*Id.* at ¶ 220.)

***Officer 10*** - On July 20, 2008, Officer 10, who is female and Caucasian, injured her left knee and left foot while on duty, apprehending a suspect (*Id.* at ¶¶ 221-224.) On July 24, 2008, she filed for GML 207-c benefits. (*Id.* at ¶ 225.) Chief Brower approved the application for GML 207-c benefits (*Id.* at ¶ 226.)

Officer 10 never stayed out on non-GML 207-c leave for more than one year. (*Id.* at ¶ 227.)

***Officer 11*** - Officer 11, who is female and Caucasian, never stayed out on non-GML 207-c leave for more than one year in connection with any incident. (*Id.* at ¶¶ 228-29.)

## ARGUMENT

### I.  THERE IS NO MATERIAL FACTUAL DISPUTE AS TO PLAINTIFF'S DISCRIMINATION CLAIM; IT FAILS AS A MATTER OF LAW AND MUST BE DISMISSED

Defendants never discriminated against Plaintiff on account of her race or gender, and there is no evidence to support her claim of gender or race-based discrimination.

The familiar burden-shifting framework applies to Plaintiff's discrimination claims. *See Williams v. New York City Dep't of Educ.*, No. 19-cv-01353 (MKV), 2021 WL 1178118, at *10 (S.D.N.Y. Mar. 29, 2021) (discrimination claims under NYSHRL subject to same standards as Title VII); *Kobos v. Target Corp.*, No. 15-cv-5573 (DRH)(SIL), 2018 WL 2943575, at *5 (E.D.N.Y. June 12, 2018) (discrimination claims under Title VII, ADEA, and NYSHRL all evaluated under same standards) (citations omitted); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 251 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (applying *McDonnell-Douglas* burden shifting to claims under Title VII, the ADEA, § 1983 and  the NYSHRL).

To establish a claim for employment discrimination under Federal or State law, the

plaintiff "has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *see also McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). To meet this burden, Plaintiff must show: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Fuentes v. Cablevision Sys. Corp.*, No. 14-cv-32 (RRM) (CLP), 2016 WL 4995075, at *5 (E.D.N.Y. 2016). If Plaintiff successfully establishes a *prima facie* case, the burden shifts to Defendants to establish legitimate, non-discriminatory reasons for their actions. *Id.* The burden then shifts back to Plaintiff to prove, with admissible evidence and not conclusory supposition, that Defendants' articulated rationale is a mere pretext for discrimination. *Id.*

"The ultimate burden of persuading the trier of fact that the defendant[s] intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Birch Fam. Servs., Inc. v. Wlody*, No. 19-cv-03301 (DLI)(PK), 2021 WL 2312852, at *6 (E.D.N.Y. June 7, 2021) (*citing Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093). "Summary judgment is appropriate if no reasonable jury could find that the defendant[s'] actions were motivated by discrimination." *Id.* (*citing Mitchell v. Shane*, 350 F.3d 39, 49 (2d Cir. 2003)); *see also Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004).

### A.  Plaintiff Was Not Qualified to Hold the Position of Full-Time Police Officer

An individual who is unable to fulfill the requirements of her position is not qualified for the position and, therefore, cannot claim she was subjected to an adverse employment action. *See Williams v. R.H. Donnelley Inc.*, 199 F. Supp. 2d 172, 177 (S.D.N.Y. 2002), *aff'd sub nom.*, *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123 (2d Cir. 2004) (dismissing race and gender

discrimination claim of employee whose disability rendered him unable to perform job duties).

Plaintiff admitted that, since her injury on October 29, 2013, she has not been physically able to perform the essential job functions of a full-duty police officer. (Ex. A at pg. 44.) And the Article 78 court found "nothing in the record to suggest that Petitioner is in a position to apply for reinstatement as Petitioner has never claimed that she is fit to return to her position and perform her duties." (Ex. P.) The Town's "termination letters" specifically state that plaintiff may apply for reinstatement so long as she does so within one year of her recovery from her injuries. (Ex. M.) Plaintiff never recovered or applied for reinstatement. She is not qualified for the position.

### B.  Nor Was Plaintiff Qualified for GML 207-c Benefits

According to Judge Karas' ruling on Defendants' Motion to Dismiss (Doc. No. 55 at 34.), the relevant question here is not whether the Town discriminated against Plaintiff in denying her 207-c benefits, but only whether her termination was discriminatory. Insofar as the Court will consider the question of GML 207(c) benefits, her argument fails because she not qualified for those benefits in the first instances. *McKnight v. Town of Hamburg*, No. 12-cv-1257-LJV-MJR, 2016 WL 11259014, at *6 (W.D.N.Y. Apr. 25, 2016); *see DiMeglio v. Vill. of Briarcliff Manor*, No. 07-cv-3324(LAP), 2010 WL 3664687, at *4 (S.D.N.Y. Sept. 17, 2010) (considering, in context of *prima facie* discrimination claim, whether plaintiff qualified for GML § 207-c benefits, not whether she was qualified to perform the duties of a police officer).

The facts of *DiMeglio* are remarkably similar to this case. There, as here, plaintiff claimed discrimination for denial of GML 207-c benefits. Plaintiff was assigned to work the 3:00 p.m. to 11:00 p.m. tour. 2010 WL 3664687 at *1. The plaintiff arrived to work about 15 to 20 minutes before the start of her tour. *Id.* While changing into her uniform in the locker room—before 3:00pm—she lost her balance and fell. *Id.* She applied for disability leave under GML 207-c, but

the Chief denied the plaintiff's application because the injury happened before her tour started. *Id.*

Judge Loretta A. Preska ultimately held plaintiff failed to make a *prima facie* showing of gender discrimination as to the denial of her application for GML 207-c benefits. *Id.* at 5. She found plaintiff offered "no legal authority or factual evidence to support the proposition that changing into one's uniform prior to the start of a tour of duty constitutes an 'official duty' within the scope of Section 207–c." *Id.* at 4. Thus, the plaintiff did "not demonstrate[e] that she was qualified or entitled to any benefit." She held, "Because Plaintiff has failed to satisfy this prong of her prima facie burden, summary judgment is warranted on this basis alone." *Id.*

Here, as in *DeMeglio,* Plaintiff arrived to work before her shift started. (Defs' 56.1 ¶ 13.) She went to the locker room to change into her uniform. (*Id.*) While changing into her uniform, she injured her back. (*Id.*) The incident happened at 3:52 PM, before to her scheduled tour of duty at 4:00 PM. (*Id.* at 14-15.) She submitted an application for disability leave under GML 207-c, which Chief denied because her accident happened before her tour of duty started. (*Id.* at 18-20.)

Here, as in *DiMeglio,* "Because Plaintiff has failed to satisfy this prong of her prima facie burden, summary judgment is warranted on this basis alone." 2010 WL 3664687 at *5.

### C.  There Is No Evidence to Support an Inference of Discriminatory Intent

There is no reason to think discriminatory intent played any role in Defendants' decision to terminate Plaintiff or to deny her benefits. She does not claim anyone ever said or did anything that was in any way indicative of racist comments. (Ex. A at pg. 46-49.) Nor does she claim anyone ever said or did anything that was in any way indicative of anti-female comments, other than one lawsuit in which the case was ultimately dropped. (Ex. A at pg. 49-50.)

Plaintiff's entire claim rests on her assertion she was treated differently than Caucasian officers, without any substantive facts to demonstrate they were similarly situated or even really treated differently. There is no cause to think the reason for Plaintiff's termination was pretextual

or that Plaintiff's race or gender played any role in the decision.

Without any direct evidence of discriminatory intent, Plaintiff must rely on "comparator" officers she believes were similarly situated but treated better. To be sure, "[a] showing of disparate treatment – that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). But Plaintiff cannot make that showing.

The majority of officers Plaintiff identifies as comparators were not similarly situated to her in any way that counts. "If a comparison with another employee is to lead to an inference of discrimination it is necessary that the employee be similarly situated **in all material respects**." *Parra v. City of White Plains*, 48 F.Supp.3d 542, 553 (S.D.N.Y. 2014) (*quoting Staff v. Pall Corp.*, 233 F.Supp.2d 516, 536 (S.D.N.Y. 2002)) (emphasis added). Here, it is impossible to make any meaningful, coherent comparison between any one officer's circumstances and another's in this context. There are just too many different variables to consider, much less to conclude the comparators are similar in all material respects, which is necessary for comparator analysis. The alleged comparators—which date back to the early 1990's, all suffered different injuries, some before their tours and some after, under different circumstances, and made different applications, to different decision-makers, under different rules and regulations. No reasonable jury could reasonably conclude that any of the individual officers are valid comparators.

As Judge Karas stated, "Whether employees are similarly situated is ordinarily a question of fact; however, if there are many distinguishing factors between plaintiff and the comparators, the court may conclude as a matter of law that they are not similarly situated." Doc. No. 55 at 32-33; *see Watson v. Geithner*, Nos. 09-cv-6624, 10-cv-3948, 10-cv-7282, 2013 WL 5420932, at *10

(S.D.N.Y. Sept. 27, 2013)); *Nurse v. Lutheran Med. Ctr.*, 854 F.Supp.2d 300, 312 (E.D.N.Y. 2012), *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n. 2 (2d Cir. 2001) ("[T]his rule is not absolute ... and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.").

Courts in this circuit routinely dismiss discrimination claims when they determine—as a matter of law—that a plaintiff has failed to offer valid comparators. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94 (2d Cir. 2001) (dismissing § 1981 discrimination case because plaintiffs did not offer sufficient comparator evidence from which a jury could reach a conclusion that plaintiffs were similarly situated to comparators); *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (holding that alleged comparators were not similarly situated in part because they had different supervisors); *Anderson v. Anheuser Busch, Inc.*, 229 F.3d 1135, 2000 WL 1370266, at *1 (2d Cir. 2000) (summary order); *McKinney v. Bennett*, No. 06-cv-13486 (SCR)(MDF), 2009 WL 2981922, at *7 (S.D.N.Y. Sept. 16, 2009); *Rommage v. MTA Long Island R.R.*, No. 08-cv-836, 2010 WL 4038754, at *9 (E.D.N.Y. Sept. 30, 2010); *Nurse*, 854 F.Supp.2d at 312; *Doner-Hedrick v. New York Inst. of Tech.*, 874 F. Supp. 2d 227, 243 (S.D.N.Y. 2012); *Humphreys v. Cablevision Sys. Corp.*, No. 10-cv-4737, 2012 WL 5289566, at *1 (E.D.N.Y. Oct. 23, 2012), *aff'd*, 553 F. App'x 13 (2d Cir. 2014); *Watson*, 2013 WL 5420932 at *10; *Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13-cv-1257 (RRM)(CLP), 2015 WL 5437575, at *1 (E.D.N.Y. Sept. 15, 2015); *Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*, No. 13-cv-4467 (MKB), 2015 WL 5692860, at *10 (E.D.N.Y. Sept. 28, 2015); *Baby v. Nassau Healthcare Corp.*, No. 14-cv-3297 (JMA)(GRB), 2017 WL 3279091, at *15 (E.D.N.Y. Feb. 6, 2017), *report and recommendation*

*adopted*, No. 14-cv-3297 (JMA)(GRB), 2017 WL 3278901 (E.D.N.Y. Aug. 1, 2017).

Plaintiff cannot rely on any comparators that predate 2016, because those officers were subject to a different set of policies on termination for extended leave. *Conway v. Microsoft Corp.*, 414 F.Supp.2d 450, 465 (S.D.N.Y. 2006) (employees who were subject to different workplace standards were not similarly situated). In 2016, the Town entered into a Memorandum of Agreement with the union, whereby the Town and union was agreed that the Town could terminate under Civil Service Law § 71 officers who remained out on leave for more than a year without line of duty injury (GML 207-c). Ex. DD. This policy was not in effect before 2016, so officers on extended leave before then would not have been subject to the same policy as Plaintiff.

And many of the comparators applied for benefits to different decision-makers, *i.e,* different police chiefs. For example, Officer 6 applied for benefits with Chief Dolan (Defs' 56.1 ¶ 124) and Chief Weidel (*Id.* at ¶ 160), Officer 8 applied for benefits with Chief Weidel, (*Id.* at ¶ 203), and Officer 9 applied for benefits with Chief Ruggiero (*Id.* at ¶ 211).

As to the termination, there is no evidence Board members who decided to terminate Plaintiff ever had to decide whether to terminate any other officer for similar reasons.

To the extent there can be any meaningful comparison, most of the officers identified— Officers 1-5 and 7-11—are *dissimilar* in the one respect that makes all the difference: they all had GML 207(c) job protections that Plaintiff did not have when she was termination. Unlike Plaintiff, Officers 1-5 and 7-11 never stayed out on leave for over a year without GML 207-c protection.

There is only one officer who, like Plaintiff, stayed out on disability leave for more than one year without 207(c) benefits: Officer 6. And the Town treated that officer, a white male, the same as Plaintiff. As with Plaintiff, the Town informed Officer 6 that his employment would be

terminated under of the Civil Service Law Sec. 71. In a settlement, Officer 6 retired his position.

The majority of comparators approved for 207-c benefits claimed on-duty injuries: Officer 6 injured his back when exiting a tractor trailer while on-duty; Officer 6 injured his left arm when a dog bit him while on-duty; Officer 4 injured his neck when he hit a tree with his police car on-duty; Officer 2 injured his shoulder when attempting to chase a suspect in a marshy area on-duty; Officer 10 injured her knee chasing a suspect while on-duty; Officer 1 injured his forearm canvassing the woods looking for a hunter on-duty; Officer 9 injured his arm putting on a heavy leather jacket in the supervisors' locker room on-duty; Officer 4 injured his back, struck by a passing vehicle while on-duty; Officer 6 injured his head after responding to a report of smoke in a house while on-duty; Officer 6 injured his eye when a fragment of a lead shot pellet ricocheted and struck him during training while on-duty; Officer 8 injured his neck in a motor vehicle accident while on-duty; Officer 7 injured his knee slipping on the floor in the bathroom while on-duty; Officer 4 injured his back after being tased while on-duty; Officer 5 injured his leg during rifle training at the range while on-duty; Officer 8 injured his hamstring during a firearms qualification course range on-duty; Officer 5 injured his knee assisting an intoxicated person into a holding cell on-duty; Officer 6 injured his shoulder checking a residence where a fire alarm had gone off on-duty; Officer 1 injured his knee when handcuffing a prisoner on-duty; and Officer 6 injured his hand after slipping on an icy road surface while on-duty.

And when Plaintiff claimed on-duty injuries, she was similarly approved. When Plaintiff was denied 207-c benefits, it was because her injury occurred off-duty.

In some instances, even officers injured on duty were denied 207-c benefits, like when Officer 6 injured his head placing patrol equipment in the front passenger side of his vehicle, or when Officer 8 suffered smoke inhalation while at the scene of a fire. And of the comparators, any

18

time an officer was deemed injured off-duty, like Plaintiff, the Department denied their GML 207-c benefits request.

There is also no valid comparison in terms transitional duty or days out sick. Plaintiff has argued attendance records for Officer 7 show that, starting in late September 2007, he stayed out of work for more than one year on non-GML 207-c leave. His situation is easily distinguishable from Plaintiff. Officer 7 applied for disability retirement for an April 30, 1992 incident where he responded to a burglary call on-duty. He applied for disability retirement on September 27, 2007 and was denied on January 13, 2009. Just as Plaintiff was carried sick while her GML 207-c application was pending, Officer 7 was carried sick from late September 2007 to mid-December 2008, then used vacation days to mid-January 2009. After his application was denied, he returned to work. In contrast, Plaintiff never returned to work after her 207-c application was denied and appeal exhausted.

The issue of transitional duty is a red herring. Department policy provides that officers who are out on GML 207-c disability may be directed to return to work to perform specific limited transition duties, such as communications duty, report writing, and in house administration. (Defs' 56.1 ¶ 66.) Only officers on GML 207-c status or pending GML 207-c status are eligible for transitional duty, and there is no evidence any officer was assigned transitional duty when they did not have GML 207-c status. (*Id.* at 68.) Plaintiff makes some claims about other officers and transitional duty but has no admissible evidence to support them. She was not treated differently from any officers in this regard.

Plaintiff may argue, if she had been assigned to transitional duty in spring 2015, it would have reset the one-year "carried sick" clock for her termination, and she would not have been terminated. But the facts don't support this claim—whether Plaintiff was or was not assigned

19

transitional duty in April 2015 makes no difference. As of May 9, 2015, when Judge Sherwood affirmed the Chief's denial of GML 207-c status, Plaintiff was no longer "LODI or pending LODI," so she was no longer eligible for transitional duty, and she remained ineligible for the next year. After carrying Plaintiff as sick from May 2015 until June 2016, the Town officially terminated Plaintiff on June 24, 2016, in accordance with Civil Service Law § 71.

Finally, even if Plaintiff could set forth a valid comparator and show different treatment, her claim would still fail because there is no evidence any of the individual decisionmakers were aware of the other comparators or their circumstances. If Defendants did not *know* they were treating Plaintiff differently from white or male officers, then there is no reason to think Plaintiff's race or gender factored into their decision-making.

### D. Defendants Had Legitimate, Non-Discriminatory Reasons for their Actions

Even if the burden were to shift to Defendants to demonstrate legitimate, non-discriminatory reasons for their actions, Defendants readily satisfy their burden. The Town terminated Plaintiff for a legitimate, non-discriminatory reason: her medical condition prevented her from performing the essential functions of a full-duty police officer for more than a year and she was not entitled to GML-207 line of duty benefits.

Termination is proper where an employee "was medically separated from service pursuant to Civil Service Law § 71, which authorizes public employers to medically separate civil servants if they are out on medical leave for more than one year, and fail to demonstrate that they are fit to return to full duty." *Wiggins v. New York City Dep't of Correction*, No. 06-cv-1946 (THK), 2008 WL 3447573, at *10 (S.D.N.Y. Aug. 12, 2008). Indeed, Plaintiff challenged her termination in an Article 78 Proceeding, and the N.Y.S. Supreme Court upheld her termination. (Ex. B.)

### E. There is No Evidence This Straightforward Reason for Termination Was Pretextual

Plaintiff bears the burden of showing that Defendants' proffered reason is mere pretext and

that invidious discrimination is the real reason for Defendants' actions. The record is bereft of evidence to support such a notion. Failing to meet this burden, Plaintiff must see the case dismissed.

## II.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

In addition to reasons set forth above, the Court should also dismiss the 42 U.S.C. § 1983 claim against the individual Defendants on qualified immunity grounds. There was no clearly established law in the Second Circuit or the Supreme Court to put Defendants on notice that their actions were unconstitutional under the specific circumstances in this case, so they are entitled to qualified immunity from suit. Even if the Court finds Plaintiff has an actional claim under these circumstances, the claims against the individual Defendants must be dismissed.

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments.'" *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S.Ct. 1765, 1774 (2015) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 739, 131 S.Ct. 2074 (2011)). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft*, 563 U.S. at 741 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640,

107 S.Ct. 3034 (1987)); *see also Lane v. Franks*, 573 U.S. 228, 134 S.Ct. 2369 (2014).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (per curiam). Although "this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*; *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (internal quotation marks omitted). Qualified immunity is a time-sensitive inquiry. "[T]he salient question ... is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (internal citations and quotations omitted).

Here, the individual Defendants are entitled to qualified immunity unless the Constitutional violation was "clearly established," beyond debate, at the time of the challenged conduct. There is no clearly established law made it unlawful for them to terminate Plaintiff under the circumstances here. There is certainly no precedent that "placed the statutory or constitutional question beyond debate"—no case with substantially similar circumstances that would have put the individual Defendants on notice.

Moreover, insofar as Plaintiff relies on alleged comparators as a basis for an inference of discrimination, there is no evidence the individual Defendants were aware of those comparators. They could not have intentionally treated Plaintiff differently from other officers if they did not

know the circumstances of those other officers and their leave applications.

## CONCLUSION

For the foregoing reasons, defendants respectfully submit that this Court should grant their motion dismissing the Amended Complaint in its entirety, together with such other relief as this Court may deem proper, equitable, and just.

Dated: Carle Place, New York
      December 9, 2022

                                  SOKOLOFF STERN LLP
                                  *Attorneys for Defendants*

By:   Leo Dorfman
       Daniel R. Axelrod
       179 Westbury Avenue
       Carle Place, New York 11514
       (516) 334-4500
       File No.: 170100