UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
YOLANDA TYSON,

                          Plaintiff,

    -against-

THE TOWN OF RAMAPO; CHRISTOPHER P.
ST. LAWRENCE, as Town Supervisor;
YITZCHOK ULLMAN, as Councilman;
SAMUEL TRESS, as Councilman, BRENDEL
CHARLES aka BRENDEL LOGAN, as Councilwoman,
PATRICK J. WITHERS, as Councilman,
BRAD R. WEIDEL, as Chief of Police,
Police Department Town of Ramapo; PETER F.
BROWER, as Former Chief of Police, Police
Department Town of Ramapo and THOMAS COKELEY,
as Captain, Police Department Town of Ramapo,
each sued individually and in their official
capacities as employees of THE TOWN OF RAMAPO,

                       Defendants.

-----------------------------------------------------------------------x

No. 17-CV-04990 (PMH)

# MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SUSSMAN & GOLDMAN
*Attorneys for Plaintiff*
1 Railroad Avenue, Ste. 3
P.O. Box 1005
Goshen, New York 10924

Dated: January 3, 2023

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

STANDARD OF REVIEW ............................................................................................ 6

ARGUMENT ................................................................................................................... 7

    <u>Point I</u>

    Defendants discriminated against plaintiff when they refused to
    accommodate her by assigning her light duty in 2015 ...................................... 7

    <u>Point II</u>

    A reasonable jury could find that Defendants did intentionally
    Discriminate against Plaintiff .................................................................................. 12

    <u>Point III</u>

    Defendants' discriminatory failure to accommodate Plaintiff tainted
    their decision to terminate her and made it discriminatory as well ................... 13

    <u>Point IV</u>

    Qualified immunity does not apply ........................................................................ 16

CONCLUSION ................................................................................................................ 17

## TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................6, 16

*Brown v. Waterbury Bd. of Educ.*,
247 F. Supp. 3d 196 (D. Conn. 2017)...................................................10

*Cine SK8, Inc. v. Town of Henrietta*,
507 F.3d 778 (2d Cir. 2007) ...........................................................10

*Clark v. Jewish Childcare Ass'n, Inc.*,
96 F. Supp. 3d 237 (S.D.N.Y. 2015) ...................................................10

*Danzer v. Norden Systems, Inc.*,
151 F.3d 50 (2d Cir. 1998) ..............................................................6

*Graham v. Long Island R.R.*,
230 F.3d 34 (2d Cir. 2000) ..............................................................9

*Harlen Assocs. v. Inc. Vill. of Mineola*,
273 F.3d 494 (2d Cir. 2001) ...........................................................14

*Holcomb v. Iona College*,
521 F.3d 130 (2d Cir. 2008) ...........................................................6, 7

*Hope v. Pelzer*,
536 U.S. 730 (2002)......................................................................16

*Lizardo v. Denny's Inc.*,
270 F.3d 94 (2d Cir. 2001) .............................................................12

*Mandell v. County of Suffolk*,
316 F.3d 368 (2d Cir. 2003) .............................................................9

*McGuinness v. Lincoln Hall*,
263 F.3d 49 (2d Cir. 2001) ..............................................................9

*Meiri v. Dacon*,
759 F.2d 989 (2d Cir. 1985) .............................................................7

*Mitchell v. Forsyth*,
472 U. S. 511 (1985).....................................................................16

*Morris v. Landau,*
      196 F.3d 102 (2d Cir. 1999) ........................................................................7

*Norton v. Sam's Club,*
      145 F.3d 114 (2d Cir. 1998) ........................................................................7

*Osekavage v. Sam's East, Inc.,*
      2022 U.S. Dist. LEXIS 138184 (S.D.N.Y. Aug. 3, 2022) ...........................14, 15

*Piesco v. City of New York,*
      933 F.3d 1149 (2d Cir. 1991) ......................................................................7

*Rajcoomar v. TJX Cos., Inc.,*
      319 F. Supp. 2d 430, 438 (S.D.N.Y. 2004) ................................................14

*Reeves v. Sanderson Plumbing Products, Inc.,*
      530 U.S. 133 (2000)................................................................................6, 7

*Ruiz v. County of Rockland,*
      609 F.3d 486 (2d Cir. 2010) ........................................................................9

*Schiano v. Quality Payroll Sys.,*
      445 F.3d 597 (2d Cir. 2006) ........................................................................7

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.,*
      391 F.3d 77 (2d Cir. 2004) ........................................................................13

*Shumway v. United Parcel Serv., Inc.,*
      118 F.3d 60 (2d Cir. 1997) ....................................................................9, 13

*Sood v. Rampersaud,*
      WL 1681261 (S.D.N.Y. Apr. 17, 2013) ....................................................13

*Walsh v. N.Y.C. Hous. Auth.,*
      828 F.3d 70 (2d Cir. 2016) ..........................................................................7

*Weinstock v. Columbia Univ.,*
      224 F.3d 33 (2d Cir. 2000) ........................................................................14

*Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.,*
      973 F. Supp. 2d 386 (S.D.N.Y. 2013) ......................................................13

*Williams v. R.H. Donnelley, Corp.,*
      368 F.3d 123 (2d Cir. 2004) ......................................................................11

## Feder Rules of Civil Procedure

Fed. R. Civ. P. 56(a) .............................................................................................................6

# PRELIMINARY STATEMENT

Plaintiff alleges that she was subject to impermissible race and gender discrimination when defendants terminated her employment. Plaintiff has never litigated these claims, and prior judicial rulings do not assist defendants. Indisputably, plaintiff was treated in a manner different than male Caucasian officers in and by the defendant Town.

Defendants claim that there is no reason to believe that her termination was anything but the proper application of New York Civil Service Law, untainted by invidious motivation, and seek summary judgment, necessarily positing that there are no material issues of disputed facts and that a reasonable jury could not reject its defenses and find they engaged in intentional and prohibited discrimination. While defendants assert that there is "no cause to think" that plaintiff's termination was unlawful, that conclusion ignores the evidence that led plaintiff to reach this conclusion, and which could reasonably lead a rational jury in the same direction.

The question presented is whether, considering the difference in treatment between plaintiff and white male officers, defendants are entitled to summary judgment. The answer is that they are not: indeed, these defendants implemented disparate treatment and have not even presented Affidavits purporting to explain the difference in treatment. The question presented suggests that defendants believe a district court can act as a finder of fact in such a case and determine their motivation as a matter of law. But, because their motivation is quintessentially a question of fact, not of law, the motion should be denied.

Defendants make other conceptual errors: while plaintiff may not be able to get relief for any act other than her termination, this does not mean that their course of conduct cannot inform a jury's resolution of their intent. Here, by treating plaintiff as they did, defendants foreseeably

1

created a justification for her termination; the question is whether they set up that condition based on her race and/or gender.

## STATEMENT OF FACTS

Plaintiff injured herself at defendant Town's workplace. Contrary to defendants' rendition of the facts, plaintiff was required to report to work 15 minutes before the start of her shift and, after so reporting, while dressing, she injured her back. *See* Plaintiff's Response to Defendants' Rule 56.1 Statement, ¶ 13 and Tyson Affidavit ¶ 3. Yet, the Town denied her GML. § 207-c status on the ground that her tour of duty commenced at 4:00 p.m. Plaintiff has denied the accuracy of this statement.

The hearing officer defendants selected upheld defendant' denial of 207-c status. Thereafter, plaintiff sought light duty, that is, a re-assignment which would allow her to contribute to the police agency while she recovered from her injuries. Numerous Caucasian officers were unable to perform the essential functions of a full duty police officer. Defendants provided them "transitional" or "light" duty. *See* Tyson Affidavit ¶ 4.

After granting her a transitional accommodation for a brief period, the Town took back this light duty assignment. However, defendants provided this same accommodation to white male officers granted 207-c status. After taking away her light duty assignment, and despite knowing this was not possible, defendants demanded that plaintiff return to full duty. When plaintiff could not do so, defendants invoked Section 71 of the New York State Civil Service Law and terminated her employment.

In short, defendants refused to allow plaintiff to return to work on light duty, effectively causing her termination because she was not otherwise able to return to work. Plaintiff would not

2

have been terminable under Section 71 had defendants continued her on light duty but, after she sought to return to work in the spring 2015, defendants refused. *See* Tyson Affidavit ¶ 7.

Without dispute, during the same time, defendants provided light duty assignments to numerous white, male officers. Defendants have not identified a single other officer with respect to whom they denied light duty accommodation upon request and, in essence, plaintiff's claim is that this decision, caused the decision to terminate and that both decisions instanced racial/gender discrimination.

In their belated discovery responses, and here again, defendants have merely proven plaintiff's crucial point: they provided 207-c status and transitional assignments [which often lasted for years] to numerous white, male police officers, carrying them at full pay – often, again, for years – by affording them light duty. *See* Defendants' Statement of Undisputed Facts ¶¶ 66-69. Defendants treated plaintiff differently – denying her 207-c status but, more significantly, denying her light duty, though defendants admittedly accommodated other white male officers.

Defendants' presentation assumes as "facts" matters which were never proven. The department's acceptance of these "facts" reflect favoritism toward white male officers. A reasonable jury could view this pattern as starkly in contrast with the niggardly manner which the same department viewed plaintiff's claim for 207-c.

In 2008, Officer 1 reported that he had a deer tick. The department accorded him 207-c status, though he never proved that this happened when he was on duty. *See* Exhibit 1 to Sussman Affirmation for D-4652. The department accorded Officer 1 207-c status again in 2015, though his medical records do not suggest the existence of any disabling injury which derived from his employment as a police officer. *See* Exhibit 2 to Sussman Affirmation for D004639-40. This officer retained 207-c benefits for two-and-one-half years, though testimony developed at his

worker compensation hearing demonstrated that his knee had "significant evidence of arthritis," a disabling condition never correlated to scraping it on the ground while subduing an inmate. *See* Exhibit 3 to Sussman Affirmation for D004627. The evidence strongly suggests that Officer 1 had no work-related basis to be out of work on 207-c leave for 28 months and, instead, suffered from degenerative arthritis, a condition which did not derive from his work.

Likewise, Officer 2, another white male, claimed to have strained his right shoulder on September 9, 2007. But his own incident report makes no reference to his sustaining any injury while apprehending an arrestee, and his report makes no reference to feeling any pain or the activity which allegedly caused such pain. *See* Exhibit 4 to Sussman Affirmation at D004671 and 004677. The file defendants provided contains no doctor's note substantiating any such injury, and a witnessing officer "was not aware Officer 2 was injured." *See* Plaintiff's Reply to Defendants' Statement of Material Facts ¶ 56.

Officer 2 remained on light duty for nine years, between November 2008 and December 30, 2017. *See* Exhibit 5 to Sussman Affirmation [004977-86]. On March 14, 2009, the State Comptroller denied his application for accidental disability retirement, deeming any injuries not causally related to an accident. *See* Exhibit 6 to Sussman Affirmation [D-04679].

The files provided for Officer 3 provide no basis to understand how he injured himself. They do reflect that he declined medical care after reporting his injury. *See* Exhibit 7 to Sussman Affirmation [D004693]. Officer 3 received salary for nine years, between 1992-2001, though the filed provided contains no evidence that he sought 207-c status or why he received the same. The State Comptroller deemed Officer 3 not permanently disabled when he sought, and was denied, performance of duty-related disability retirement. *See* Exhibit 8 to Sussman Affirmation [D-

004701].  It appears that despite the absence of any work-related basis, the defendants provided Officer 3 with light duty for nine years. *See* Exhibit 9 to Sussman Affirmation [D004694].

Officer 4 claims to have suffered a neck injury when he drove his car into a tree; however, he returned to work the same day as this accident. *See* Exhibit 10 to Sussman Affirmation [D-5050].  Six weeks after this incident, Chief Brower approved Officer 4's application for 207-c. Following another injury, defendants accommodated him with light duty assignments for years. *See* Exhibit 11 to Sussman Affirmation [D-5032-38].

In March 2013, Chief Brower denied Officer 5 207-c because the injury he claimed to have sustained occurred after he left work. *See* Defendants' Statement of Undisputed Facts ¶¶ 109-110.

On March 31, 2016, Chief Weidel retroactively approved Officer 6's 207-c application for a period of two weeks. *Id.* ¶ 160.  Defendants concede that Officer 6 "stayed out on disability leave without GML 207-c status for more than one year."  During this period, though not on 207-c, defendants directed Officer 6 to return to work on light duty, but for months he refused to do so. Though he was not on 207-c status, defendants-maintained Officer 6 on salary for more than three years [2016-2019], though he was not performing any duties and had refused to perform assigned light duty. *See* Exhibit 12 to Sussman Affirmation [004794].  And then, defendants provided him additional time on salary to get to his retirement date. *Id.* [D004794-97].

Officer 7 remained out of work on a non-207-c recognized injury between September 27, 2007, and January 13, 2009. *See* Exhibit 13 to Sussman Affirmation [D-4874-76].

Defendants denied Officer 8 207-c since he did not suffer any disabling condition or miss any work though exposed to smoke during a fire. *See* Exhibit 14 to Sussman Affirmation [D004916].

5

Defendants granted Officer 9 207-c status for injuries allegedly sustained while he was getting dressed for work twenty minutes after his shift commenced. *See* Exhibit 15 to Sussman Affirmation [D004930, 32, 35, 36].

## STANDARD OF REVIEW

Summary judgment is appropriate only where the moving party establishes there is no genuine dispute as to any material fact, entitling it to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A fact is material if its resolution could affect the outcome of the suit and a dispute is genuine if reasonable minds may differ on its resolution. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If a reasonable jury could return a verdict for the non-moving party, then summary judgment is inappropriate and the court must deny the motion. *See Id.* at 250.

In evaluating the motion, the court must view the record in the light most favorable to the non-moving party, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in [its] favor." *See Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008).  The court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ." *Id.* at 255.  And "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." *See Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998).

Critically, the court should review the record as a whole and, in doing so, "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).  As such, "the court should give credence to the evidence favoring the non-movant as well as the evidence supporting the moving

party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* Finally, the Second Circuit has long cautioned against granting summary judgment in cases that turn on the issue of intent. *See Holcomb*, 521 F.3d at 137; *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (internal quotations omitted). At bottom, "summary judgment is inappropriate when 'questions of motive predominate' in the inquiry about the role the protected behavior played in the employment decision." *Morris v. Landau*, 196 F.3d 102, 111 (2d Cir. 1999) (citing *Piesco v. City of New York*, 933 F.3d 1149, 1154-60 (2d Cir. 1991)).

## ARGUMENT

### Point I

**Defendants discriminated against plaintiff when they refused to accommodate her by assigning her light duty in 2015.**

"The burden of establishing a *prima facie* case is not onerous and has been frequently described as minimal." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) (quoting *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998)).

Here, defendants concede plaintiff is a member of a protected group and suffered an adverse action. They dispute that she qualified for her position because they claim she was unqualified due to her medical condition, and they seem to dispute that she can claim that her dismissal was under circumstances giving rise to an inference of discrimination.

Plaintiff alleges that she qualified for a light duty assignment and that defendants discriminatorily denied this to her, enabling them to terminate her the following year [2016].

7

Defendants do not suggest that the ADA recognizes any distinction between accommodating police officers injured in the line of duty, as the police department may define it at any time and have a consequent need for a light duty assignment, and police officers whose similar needs arise in a manner which defendants claim is not work-related. Both officers are unable to work and seek light duty, a form of accommodation under the ADA.

Nor do defendants deny that, in May 2015, they denied plaintiff's request for light duty, [Tyson Affirmation ¶ 8], creating the context for her termination. Nor does the record allow them to deny that they accommodated white, male officers by providing them often very lengthy light duty assignments, and never terminated any of them, including Officer 6.

Here, the evidence goes further: Officer 6, indisputably a white male, did not return to work for more than three years and refused to report for light duty, for which he had been cleared, though he did not then enjoy 207-c status. Defendants did not invoke section 71 to terminate him during these three years. Instead, after doing so, they then offered him extra months of employment allowing him to retire with a full pension. Again, this instance highlights the disparate treatment plaintiff received.

As against this evidence, defendants argue that plaintiff is foreclosed from arguing that they improperly denied her 207-c benefits or that they disparately treated her, submitting she is not similarly situated to officers who were granted such status. This logic is fatuous because, for purposes of plaintiff's ADA request for a reasonable accommodation, the etiology of her injury is not relevant. Instead, the ADA required defendants to engage in the interactive process and accommodate her if doing so imposed no undue burden. And from the numerosity of white, male officers so accommodated and the fact that defendants did briefly accommodate plaintiff, a

reasonable jury may reject any claim that defendants could not have accommodated her, as they did others.

Defendants claim that plaintiff cannot make out a *prima facie* case of discrimination because she was not "qualified" to perform all the duties of a police officer. But this elides the issue – whether the defendants discriminated against her when they failed to provide her light duty as it did numerous white officers who, like her, were not qualified to perform all the functions of a police officer. The issue, then, is not whether plaintiff was able to perform all the duties associated with this position, but whether the department treated her in a manner similar to white males who also could not perform all the functions of the same title.

Plaintiff's theory of causation here is that she was treated less favorably than similarly situated Caucasian police officers who also were unable to work full duty but were accommodated and not then forced into a position where, after one year, the defendants could claim they had failed to work for a year and terminate them under Section 71 of the Civil Service Law.

"A showing of disparate treatment – that is, a showing that an employer treated [the] plaintiff 'less favorably than a similarly situated employee outside his protected group' – is a recognized method of raising an inference of discrimination for the purpose of making out a *prima facie* case.'" *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)). The Second Circuit has explained that, to be "similarly situated" for purposes of this theory of discrimination, "the plaintiff must show that [he] was 'similarly situated in all material respects' to the individuals with whom [he] seeks to compare [him]self." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997)); see also *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) (explaining that while "[a] plaintiff is not obligated

to show disparate treatment of an identically situated employee," the employees identified by the plaintiff "must have a situation sufficiently similar to [the] plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination"); *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 256 (S.D.N.Y. 2015) ("To be similarly situated, other employees must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." (quotation marks and alteration omitted)). This is a fact-specific inquiry, which "varies somewhat from case to case" and "must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer-imposed discipline was of comparable seriousness." *Graham*, 230 F.3d at 40.

Considering this fact-specific inquiry, the question of "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury," *id.* at 39, though "a 'court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met,'" *Brown v. Waterbury Bd. of Educ.*, 247 F. Supp. 3d 196, 206 (D. Conn. 2017) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

Plaintiff claims that she sought reasonable workplace accommodations from a Town and a police department, which provided such accommodations, through light duty, to numerous other police officers and that a jury could certainly consider her evidence that defendants denied her accommodation in 2015, setting the table for her termination the following year.

To defendants' claim that she was not qualified for purposes of making out a *prima facie* case of discrimination because she could not perform all the essential functions of a police officer,

10

plaintiff responds that the white males who were so accommodated were also not able to perform all such functions and yet received accommodations. Hence the discrimination. Defendants most notably maintained Officer 6 for three years on the department payroll after his 207-c status ended and he refused light duty.

As against this analysis, defendants cite cases which are inapposite: in *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 129 (2d Cir. 2004), an African American woman claimed discrimination when, *inter alia*, her employer failed to transfer her to a position she sought. The Court of Appeals affirmed summary judgment in favor of appellee employer, noting: "In addition to possessing the skills and experience necessary for a position, an applicant must be available to assume an open position by the date an employer designates as necessary. Where, as here, the applicant has taken an indefinite leave of absence, and has given no indication of when she will return to the workplace, she need not be considered available to fill a position for which there is an immediate need and will be deemed unqualified. Because she was unavailable to assume the vacant DSM II position within any specified time, Williams failed to establish a prima facie case of discrimination for this failure to promote claim."

Of course, this logic has no bearing where, as here, plaintiff was qualified for a light duty assignment and her doctor so certified. But defendants did not afford her such an assignment while they offered light duty assignments available to similarly situated Caucasian males who were unable to perform the full panoply of police duties.

Defendants next argue that plaintiff was not qualified to receive 207-c benefits, but as shown above, this argument is not pertinent. The defendants offered Officer 6, a white male, light duty after his 207-c status ended. Accordingly, it cannot show the relevance of plaintiff having

11

207-c status for her race/gender discrimination claim. Neither the ADA nor the department required that to obtain light duty, plaintiff had to have 207-c status.

## Point II

### A reasonable jury could find that Defendants did intentionally discriminate against Plaintiff.

Defendants have submitted no Affidavits explaining their decision to deny plaintiff light duty in 2015, setting up her termination the following year. Defendants' counsel repeatedly asserts that there is no record basis to discern discriminatory intent here as if he were a fact witness. These proclamations are irrelevant because, in deciding summary judgment motions, district courts may not accept evidence a reasonable jury could reject.

Here, Officer 6, a white male, was absent from the workplace for far more than one year after his brief 207-c leave ended. Defendants did not then terminate him. Defendants did not bring him up on disciplinary charges after he refused to accept a light duty assignment. Instead, defendants agreed to a settlement agreement, extending his paid employment to allow him to collect a pension. Defendants provide no Affidavit explaining or defending this treatment or explaining how it does not establish plaintiff's claim of discrimination.

Rather, in their brief, defendants state there are too many variables to allow a reasonable jury to view Officer 6 as a comparator. However, their brief does not explain any distinguishing variable: both he and plaintiffs were police officers; as relevant, neither was on 207-c status; the department offered Officer 6 light duty but refused to grant plaintiff such an assignment despite medical certification that she could fulfill such; the department did not terminate Officer 6; rather, it extended additional benefits to him while it did terminate plaintiff. And this happened in the same time frame under the same defendants. *Cf., Lizardo v. Denny's Inc.*, 270 F.3d 94, 101-02 (2d Cir. 2001) (affirming grant of summary judgment on appellants' section race discrimination claim

where no comparator evidence presented in that plaintiffs had seven persons in their party and compared the "wait time" at restaurant with parties which were smaller); *Shumway*, 118 F.3d at 64 (affirming grant of summary judgment where, unlike here, the principal comparators did not have same supervisor as plaintiff and plaintiff's supervisor did treat males who violated anti-fraternization rules as he treated female plaintiff);

The court cannot grant summary judgment if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought…" *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *2 (S.D.N.Y. Apr. 17, 2013) (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)). Here, such evidence plainly exists.

Rather than explain why plaintiff cannot rely on Officer 6 as a valid comparator, defendant cites to ten cases which are of limited assistance precisely because our courts have repeatedly stated that each case must be assessed on its own facts and none of theirs are ours.

## Point III

**Defendants' discriminatory failure to accommodate Plaintiff tainted their decision to terminate her and made it discriminatory as well.**

Assuming plaintiff has made out a *prima facie* case and defendant has submitted a non-discriminatory and legitimate reason for her termination [though the latter is plainly contested as shown above]. Part three of the *McDonnell Douglas* burden shifting analysis requires Plaintiff "to demonstrate that the proffered reason was not the true reason for the employment decision and that the plaintiff's membership in a protected class was." *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 397 (S.D.N.Y. 2013), *aff'd.* 586 F. App'x 739 (2d Cir. 2014). To show pretext, "a plaintiff must submit admissible evidence showing circumstances to permit a rational

finder of fact to find that the defendant's conduct was motivated in whole or in part by discrimination." *Rajcoomar v. TJX Cos., Inc.*, 319 F. Supp. 2d 430, 438 (S.D.N.Y. 2004). Evidence that a defendant treated members of a protected group in a manner inferior to the way they treated non-protected class members raises a strong inference of discrimination. As this court recently noted in denying summary judgment in *Osekavage v. Sam's East, Inc.*, No. 19-cv-11778, 2022 U.S. Dist. LEXIS 138184, at * 26 (S.D.N.Y. Aug. 3, 2022): "'As a general rule, whether items are similarly situated is a factual issue that should be submitted to the jury.'" (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001)).

By terminating plaintiff, defendants took their final adverse action her. Rather than terminating her, the defendants could have accommodated her through a light duty assignment as it had offered Officer 6 when he was not on 207-c status and other white males who were unable to perform the full range of police functions and received light duty assignments for years, under varying police chiefs. Rather than reject this evidence because it is not "about" the termination, as defendants posit, the court must analyze all relevant evidence in its totality when determining a motion for summary judgment, and how plaintiff came to be where she was in June 2016 certainly may and should be considered and understood. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

Until the end, defendants never treated plaintiff in a manner equal to these white male officers, making excuses for casting her aside after accommodating some of these officers on light duty for years. In this context, where defendants rejected plaintiff's medically supported requests for reasonable accommodation, the question presented is why.

Plaintiff contends that defendant decision-makers harbored racial and gender-based animus and manifested this through the above-described disparate treatment. Defendants claim their

14

motives were benign and neutral. This question of intent is one of fact for jury resolution and cannot be resolved by the court where competing narratives may be plausible and supported by the record. "The evidence adduced is well beyond the four corners of Plaintiff's mind; it is the type a jury needs to hear. Genuine issues of material fact exist concerning this critical issue of pretext." *Osekavage*, 2022 U.S. Dist. LEXIS 138184 at 19.

Here, despite defendants' current, contrary protestations, in 2016, the same year they fired plaintiff, their Rule 56.1 Statement states that "Officer 6 stayed out on disability leave without GML 207-c status for more than one year." *See* Defendant's Statement of Undisputed Facts ¶ 161. In fact, the record shows that this officer was out on such leave for three years, until December 2019, when "the Town informed him that his employment would be terminated under Section71 of the Civil Service Law." *Id.* ¶ 162. And, this officer was not terminated despite defendants' claim that he was treated just like plaintiff: the defendants and he entered a "settlement agreement" beneficial to Officer 6. Officer 6 was treated in a manner superior to the plaintiff, and nothing defendants have written can alter those facts.

Likewise, defendants' claim, that whether they would have assigned plaintiff light duty in May 2015 or not is irrelevant, is absurd. Had defendant then assigned plaintiff light duty, as Officer 6 was the following year after his very short 207-c stint, she would not have been subject to the termination of her employment the following year. She certainly as eligible for light duty in May 2015 as Officer 6 was when he was offered [and refused] this kind of assignment in August 2016.

In sum, the defendants discriminated against plaintiff when they refused her a light duty assignment. There was no legal basis for limiting such assignments to officers injured and on 207-c. The department offered light duty assignments to male Caucasian officers but not to plaintiff.

15

It then took advantage of her long-term absence to terminate her.  Of course, it created that long term absence by not allowing her a light duty assignment.  As Officer 6 was also not on 207-c when defendants DID OFFER him light duty in August 2016, they cannot plausibly argue that they had or implemented any policy limiting light duty to officers in 207-c.  Instead, a reasonable jury could find defendants engaged in blatant gender/race discrimination and terminated plaintiff with those motives.

**Point IV**

**Qualified immunity does not apply.**

Title VII makes unlawful the provisions of different terms and conditions of employment based upon race and gender.  The Equal Protection clause has been interpreted as prohibiting the same.  In that context, which has been well settled for fifty years, if these defendants did subject plaintiff to discriminatory terms and conditions of employment when compared to white males, they violated her clearly established right not to be so treated.

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell* [*v. Forsyth*, 472 U. S. 511,] 535, n. 12 [(1985)]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.' *Anderson v. Creighton*, 483 U. S. 635, 640 (1987)." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Here, if the defendants treated plaintiff in a manner dissimilar to white male officers based on her race/gender, they violated law which is clearly established.  If a jury determines that was their intent, in whole or in part, no serious argument can be made that they lacked notice that such conduct was unlawful.  The claim that these defendants were unaware of the comparators should

16

be categorically rejected since no defendant has taken that position before this Court, the individuals sued were responsible for managing the police department and the Town, and the court cannot, on this motion, draw any such conclusion.

## CONCLUSION

The record is replete with factual questions regarding disparate treatment and discriminatory intent, which when resolved in her favor could support a jury verdict for plaintiff. As such, summary judgment should be denied.

Dated: Goshen, New York
      January 3, 2023

Respectfully submitted,

SUSSMAN & GOLDMAN
*Attorneys for Plaintiff*

By: _____
    Michael H. Sussman (3497)
    1 Railroad Ave., Ste. 3
    PO Box 1005
    Goshen, New York 10924
    (845) 294-3991 [Tel]
    (845) 294-1623 [Fax]
    sussman1@sussman.law