UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
YOLANDA D. TYSON,

                                   Plaintiff,

v.

THE TOWN OF RAMAPO, et al.,

                                  Defendants.
----------------------------------------------------------X

**<u>OPINION & ORDER</u>**

17-CV-04990 (PMH)

PHILIP M. HALPERN, United States District Judge:

Yolanda D. Tyson ("Plaintiff") brings this action under 42 U.S.C. § 1983, presumably for violation of her constitutional right to equal protection, and New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq*., alleging that the Town of Ramapo (the "Town" or "Ramapo"), Town Supervisor Christopher P. St. Lawrence ("St. Lawrence"), Councilman Yitzchok Ullman ("Ullman"), Councilman Samuel Tress ("Tress"), Councilwoman Brendel Charles aka Brendel Logan ("Brendel"), Councilman Patrick J. Withers ("Withers"), Chief of Police of the Police Department of the Town of Ramapo ("Ramapo PD") Brad R. Weidel ("Weidel"), former Ramapo PD Chief of Police Peter F. Brower ("Brower"), and Ramapo PD Captain Thomas Cokeley ("Cokeley" and collectively, "Defendants") unlawfully denied her certain benefits and accommodations and ultimately terminated Plaintiff's employment as a Police Officer with the Ramapo PD on the basis of her race and gender.

Judge Karas, before whom this case proceeded prior to its reassignment to this Court, granted in part Defendants' motion to dismiss in a March 25, 2019 Opinion & Order (the "Prior Order").[1] (Doc. 55). Specifically, Judge Karas dismissed Plaintiff's claims against Brower and

---

[1] This decision is available on commercial databases. *See Tyson v. Town of Ramapo*, No. 17-CV-04990, 2019 WL 1331913 (S.D.N.Y. Mar. 25, 2019).

Cokeley and dismissed her first through fourth claims for relief except to the extent she alleged race and gender discrimination with respect to her termination. (*Id*.). The claims were dismissed without prejudice and with leave to replead, provided that Plaintiff filed a second amended complaint within thirty days of the date of the Court's decision. (*Id*. at 42-43). Plaintiff did not file a second amended complaint and, as a result, the sole issue that remains to be adjudicated is whether Defendants' termination of Plaintiff was discriminatory.

Presently pending before the Court is Defendants' motion for summary judgment seeking dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 56. (Doc. 103; Doc. 104, "Dorfman Decl."; Doc. 105, "Defs. Br."). Plaintiff opposed Defendants' motion (Doc. 108, "Pl. Br."; Doc. 108-1, "Tyson Aff."), and the motion was fully submitted with the filing of the motion, opposition, and Defendants' reply papers on February 8, 2023 (Doc. 106, "Reply Decl."; Doc. 107, "Reply Br.").

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

The facts recited below are taken from the Amended Complaint (Doc. 43, "Am. Compl."),

the single document representing Defendants' Local Civil Rule 56.1 Statement with Plaintiff's

responses and Counterstatement of additional material facts (Doc. 115, "56.1 Stmt."),[2] and the

admissible evidence submitted by the parties.

Plaintiff, who identifies as African American and female, was hired by the Town as a police

officer in February 2006. (56.1 Stmt. ¶¶ 1-3). On January 31, 2012, Plaintiff was injured in an on-

duty car accident with her patrol vehicle. (*Id.* ¶ 4). Plaintiff applied for benefits under New York

General Municipal Law ("GML") § 207-c, which requires, *inter alia*, that a police officer injured

in the performance of his or her duties be paid their full salary while out of work on GML § 207-

c disability leave. (*Id.* ¶¶ 5-6). Plaintiff's application was granted. (*Id.* ¶ 7). She thereafter returned

to full duty status on March 16, 2012, at which time her GML § 207-c benefits terminated. (*Id.* ¶

8; Dorfman Decl., Ex. E at 3). On September 17, 2013, Plaintiff's finger was injured while she

was restraining an emotionally disturbed person in the line of duty. (56.1 Stmt. ¶ 9). Plaintiff's

---

[2] The Court, on April 21, 2023, issued an order directing the parties to meet and confer and file a revised Rule 56.1 Statement with responses, and, to the extent the parties cited to evidence in the Rule 56.1 Statement that had not been submitted to the Court, to file supplemental affidavit(s) annexing those documents as exhibits. (Doc. 110). On May 5, 2023, Plaintiff filed an affirmation annexing seven exhibits (Doc. 113, "Sussman Aff."); Defendants filed a declaration annexing one exhibit (Doc. 114); and the parties filed two copies of a revised Rule 56.1 Statement with responses (Doc. 115; Doc. 116). As there do not appear to be any differences between the two Rule 56.1 Statements, the Court cites herein to the first filed document, Doc. 115. The Local Rules of the United States District Courts for the Southern and Eastern Districts of New York instruct that a "paragraph in the [movant's] statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c). Furthermore, "[e]ach statement by the . . . opponent . . . *including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible. . . .*" *Id.* at 56.1(d) (emphasis added). Thus, to the extent that Plaintiff fails to cite to evidence in connection with her opposition, in accordance with the Local Rules, the Court deems Defendants' statements of fact admitted unless controverted by Plaintiff *and* supported by evidence. *Brooke v. Cnty. of Rockland*, No. 17-CV-03166, 2021 WL 809320, at *2 (S.D.N.Y. Mar. 3, 2021), *aff'd*, No. 21-598-CV, 2022 WL 6585350 (2d Cir. Oct. 11, 2022).

application for GML § 207-c benefits in connection with that incident was granted. (*Id*. ¶¶ 10-11). Plaintiff returned to full duty status on September 20, 2013, at which time her GML § 207-c benefits terminated. (*Id*. ¶ 12).

On October 29, 2013 at 3:52 p.m., Plaintiff injured her back in the locker room while getting dressed for duty in her patrol uniform. (Tyson Aff. ¶ 3; Dorfman Decl., Ex. A at 32:5-12; *id*., Ex. F; 56.1 Stmt. ¶ 14). Plaintiff applied for GML § 207-c benefits in connection with that incident, but her application was denied. (56.1 Stmt. ¶¶ 18-19). Brower denied the application on the grounds that it was not a line-of-duty injury ("LODI"), concluding that Plaintiff was "not on-duty when [she] allegedly injured [her] back prior to [her] regularly scheduled work shift. Only injuries incurred while on-duty are eligible for GML 207-c Line of Duty Injury benefits." (*Id*. ¶¶ 19-20). On February 6, 2014, Plaintiff was advised that she was being carried as "sick pending LODI." (*Id*. ¶ 21).

Plaintiff applied to reacquire GML § 207-c benefits on June 25, 2014, asserting that the October 29, 2013 injury was an aggravation of the injuries she sustained in the January 31, 2012 on-duty accident. (*Id*. ¶ 23). By memorandum dated May 19, 2014, which was submitted to Lt. Reilly on June 25, 2014, Plaintiff withdrew her request for a hearing concerning the denial of the October 29, 2013 injury application. (*Id*. ¶ 24; Sussman Aff., Ex. 5). Plaintiff's application to reacquire the January 31, 2012 injury benefits was denied on July 30, 2014. (56.1 Stmt. ¶ 25). Plaintiff contends that while she was out of work beginning in October 2013, she was denied the opportunity to perform light duty assignments, despite having been medically cleared to perform such duties, while other officers—in particular, Caucasian, male officers—were permitted to perform light duties. (Tyson Aff. ¶¶ 8-9; *see generally* Pl. Br.).

4

Plaintiff never returned to work after the October 29, 2013 injury. (56.1 Stmt. ¶ 16). As of January 2016, Plaintiff had been out on sick leave without GML § 207-c benefits for more than two years. (*Id*. ¶ 32). On January 28, 2016, the Town issued a letter to Plaintiff advising that, "pursuant to Section 71 of the New York Civil Service Law and a resolution of the Town Board/Police Commission, . . . your workers' compensation leave will end and your employment with the Town of Ramapo will terminate on Monday, February 29, 2016." (*Id*. ¶ 34). Plaintiff received a second similar letter on May 18, 2016, stating her employment would be terminated as of June 24, 2016, and, after the Town Board voted, Plaintiff's employment was terminated on June 24, 2016. (*Id*. ¶¶ 35-37).

Plaintiff commenced an Article 78 proceeding in New York State Supreme Court, Rockland County on July 7, 2016, seeking to annul her termination. (*Id*. ¶ 38). That court dismissed the petition, holding that the Town's termination of Plaintiff's employment was proper under Civil Service Law § 71 and the Memorandum of Agreement. (*Id*. ¶ 39).

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486,

2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

"Courts have acknowledged the dangers of summary judgment in discrimination cases: 'Because direct evidence of . . . discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Benson v. Fam. Dollar Stores, Inc.*, No. 12-CV-01457, 2017 WL 11576213, at *3 (N.D.N.Y. Mar. 31, 2017) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotation marks omitted)), *aff'd sub nom. Benson v. Fam. Dollar Operations, Inc.*, 755 F. App'x 52 (2d Cir. 2018).

<u>**ANALYSIS**</u>

Plaintiff presses four claims for relief under 42 U.S.C. § 1983 for violation of her constitutional equal protection rights and NYSHRL § 296, alleging discrimination on the basis of her race and gender in connection with her termination. The standards governing liability for race and gender discrimination claims under § 1983 and NYSHRL § 296 are subject to the same standard as Title VII claims. *Martinez v. City of Stamford*, No. 22-702-CV, 2023 WL 3162131, at *3 (2d Cir. May 1, 2023); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006)

(citing S*mith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999)).[3] These claims are analyzed at the summary judgment stage "under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Wegmann v. Young Adult Inst., Inc., Trustees of Supplemental Pension Plan for Certain Mgmt. Emps. of Young Adult Inst.*, No. 20-1147, 2021 WL 3573753, at *4 (2d Cir. Aug. 13, 2021). The plaintiff must first present a *prima facie* case of discrimination under that framework "by demonstrating that (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* (quoting *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016)). The burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (quoting *Walsh*, 828 F.3d at 74-75).

"If the defendant articulates a legitimate reason for the action, the presumption of discrimination raised by the *prima facie* case drops out, and the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that the plaintiff's membership in a protected class was." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). Although the *McDonnell Douglas* framework is employed to analyze § 1983 claims, "courts must account for a § 1983 plaintiff's higher burden of producing evidence from which a jury could infer that the individual's discriminatory intent was a 'but-for' cause of the adverse employment action." *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019). Accordingly, at the third step of the *McDonnell Douglas* analysis, a plaintiff asserting a § 1983 claim bears a higher burden in

---

[3] Several amendments to the NYSHRL, "the effect of which is to render the standard for claims closer to the standard of the [New York City Human Rights Law] . . . . only apply to claims that accrue on or after the effective date of October 11, 2019; they do not apply retroactively to Plaintiff's claims here." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 233 (S.D.N.Y. 2021).

establishing that the employer's alternative, nondiscriminatory reason for the adverse employment action is "pretextual." *Naumovski*, 934 F.3d at 214.[4]

Defendants argue that: (1) Plaintiff was not qualified to hold the position of full-time police officer; (2) Plaintiff was not qualified for GML § 207-c benefits; (3) there is no evidence to support an inference of discriminatory intent; (4) Defendants had legitimate, non-discriminatory reasons for their actions; and (5) there is no evidence of pretext. The arguments advanced by Defendants are analyzed *seriatim*.

I.    Phase One: *Prima Facie* Case

Defendants' two arguments directed to Plaintiff's *prima facie* case of discrimination concern the second and fourth elements: that Plaintiff was qualified for the position and that the adverse action occurred under circumstances giving rise to an inference of discrimination. The Court considers each in turn.

A.    Qualified for the Position

Defendants contend that Plaintiff was not qualified to hold the position of Police Officer because, since her injury on October 29, 2013, she was not physically able to perform the essential job functions of a full-duty police officer. (Defs. Br. at 12-13 (citing *Williams v. R.H. Donnelley Inc.*, 199 F. Supp. 2d 172, 177 (S.D.N.Y. 2002), *aff'd sub nom. Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123 (2d Cir. 2004))). They also argue that the Town's "termination letters" specifically state that Plaintiff could have applied for reinstatement provided such application was made within one year of her recovery from her injuries, but she did not. (*Id.*). Defendants made the same

---

[4] The disparate treatment provision of Title VII incorporates a "lessened causation standard" than the default for tort claims and § 1983 claims generally. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 349 (2013). "This 'lessened causation standard' is the product of deliberate and specific legislation. . . . Title VII, therefore, now differs markedly from ordinary tort legislation with respect to causation." *Naumovski*, 934 F.3d at 213. Unlike Title VII claims, § 1983 claims, retain the default "but-for" causation requirement "that has long been a standard prerequisite in § 1983 claims generally." *Id.*

arguments on their motion to dismiss which were rejected by Judge Karas, because "whether Plaintiff was eligible for reinstatement under Section 71 of the Civil Service Law . . . and whether she was capable of returning to work after an extended medical leave, does not answer the question of whether Plaintiff was qualified for the position under equal protection jurisprudence." *Tyson*, 2019 WL 1331913, at *12. ("[E]specially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw. . . . Plaintiff only needs to show that she possesse[d] the basic skills necessary for performance of the job." (internal quotation marks omitted)).

Plaintiff does not, however, argue that she *was* qualified to hold the position of Police Officer. Indeed, Plaintiff seemingly concedes that she *was not* qualified for the Police Officer position, arguing only that she requested a "light duty" assignment and that she was qualified for that alternative position. (Pl. Br. at 7, 9 ("Plaintiff alleges that she qualified for a light duty assignment and that defendants discriminatorily denied this to her, enabling them to terminate her the following year [2016]." . . . "The issue, then, is not whether [P]laintiff was able to perform all the duties associated with [the Police Officer position], but whether the department treated her in a manner similar to white males who also could not perform all the functions of the same title.")). She argues that Defendants discriminated against her when they refused to accommodate her with light duty status.[5]

Although Plaintiff has not cited any admissible evidence suggesting that she actually requested light duty status, or when she requested such an assignment following the October 29,

---

[5] Plaintiff's repeated references to the Americans with Disabilities Act and purported request for a reasonable accommodation is a disingenuous attempt to recast the claims she asserted in this action. Stripped to its essence, this case is about Plaintiff's belief that she was terminated based upon her race and gender. Her attempts, through her opposition, to recreate claims and arguments that have been dismissed or to raise new claims that she has not alleged in her pleading, impermissibly makes her case a moving target that the Court declines to entertain.

2013 injury, the record supports the inference of Plaintiff's minimal qualification for light duty assignments. Defendants have established that "transitional duties include, inter alia, communications duty, report writing and in house administration" (56.1 ¶ 69; *see, e.g.,* Dorfman Decl., Ex. Y at 16-17), and Plaintiff affirmed that after she sustained an earlier injury, she was provided transitional duty assignments for a period (which she explains has the same meaning as "light or modified" duty) (Tyson Aff. ¶¶ 3-4). Because Plaintiff was hired as a Police Officer in 2006 (56.1 ¶ 3) and worked in that position until her termination in June 2016 (*id.* ¶ 37), and because she was, at least at one point during her employment, given a light duty assignment, the Court finds that Plaintiff has made the "minimal showing that she possesses the basic skills necessary for performance of [either] job." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001); *see also Tyson*, 2019 WL 1331913, at *12.

Defendants, separate and apart from their argument concerning Plaintiff's qualification as Police Officer, also contend that Plaintiff has not and cannot show she was qualified for GML § 207-c benefits. However, and as Defendants point out, the question of whether the Town discriminated against Plaintiff in denying her GML § 207-c benefits is not an issue before this Court. To the extent the Amended Complaint raised such a claim (*see* Am. Compl.), it was dismissed by the Prior Order (*see* Doc. 55 at 34 (dismissing Plaintiff's claims except to the extent she alleged race and gender discrimination with respect to her termination, only)). Plaintiff does

not argue to the contrary and the Court therefore need not and does not address this branch of Defendants' argument.[6]

Accordingly, Plaintiff has satisfied the second element of a *prima facie* case of discrimination.

## B. Inference of Discriminatory Intent

Defendants contend that Plaintiff fails to satisfy the fourth element of a *prima facie* case, arguing there is no evidence in the record to support an inference of discriminatory intent. "A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for the purposes of making out a *prima facie* case." *Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 20-21 (2d Cir. 2013) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010)).

"The 'standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' such that 'the comparator must be similarly situated to the plaintiff in all material respects.'" *Abdul-Hakeem*, 523 F. App'x at 21 (quoting *Ruiz*, 609 F.3d at 494); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("[T]he plaintiff must show she was similarly situated in all material respects to the individuals

---

[6] Even if Plaintiff did have a surviving claim that the Town discriminated against her in denying her GML § 207-c benefits, the holding in *DeMeglio v. Vill. of Briarcliff Manor*, cited by Defendants, is dispositive of such claim. No. 07-CV-03324, 2010 WL 3664687 (S.D.N.Y. Sept. 17, 2010). The plaintiff in that case, like here, was injured while changing into her uniform in the locker room, approximately 15 minutes before the start of her tour of duty. The plaintiff's application for GML § 207-c benefits was denied on the grounds that the injury happened before her tour started, as was the case here. The Court in *DiMeglio* granted summary judgment to the defendant, holding that the plaintiff failed to establish she was qualified for GML § 207-c so as to make out a *prima facie* showing of gender discrimination. The plaintiff, like Plaintiff in this case, offered "no legal authority or factual evidence to support the proposition that changing into one's uniform prior to the start of a tour of duty constitutes an 'official duty' within the scope of Section 207–c." *Id*. at *4.

with whom she seeks to compare herself."). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Johnson v. L'Oreal USA*, No. 21-2914-CV, 2023 WL 2637456, at *4 (2d Cir. Mar. 27, 2023) (quoting *Ruiz*, 609 F.3d at 493-94); *see also Graham*, 230 F.3d at 40.

Although eleven Caucasian officers were identified by the parties as possible comparators (56.1 ¶¶ 40-229), Plaintiff focuses solely on Officer 6 in her opposition with respect to her analysis of Defendants' alleged disparate treatment. Plaintiff therefore abandoned any argument that Officers 1-5 and 7-11 are adequate comparators.[7]

Plaintiff's argument concerning Officer 6 is that he and Plaintiff were, in all material respects, similarly situated, but that Officer 6, a Caucasian male, was offered a light duty assignment whereas Plaintiff was not, and Officer 6 was not ultimately terminated from employment. (56.1 Stmt. ¶ 110; Pl. Br. at 5, 8, 12-13). Officer 6 and Plaintiff were both Ramapo PD police officers; and although Officer 6 had been granted GML § 207-c leave, after that status terminated, like Plaintiff he was thereafter absent from the workplace for more than one year. (56.1 Stmt. ¶¶ 159-160; Ex. X at pg. 29-59; Ex. R). The record evidence demonstrates that although

---

[7] Defendants analyzed each Officer in their moving papers. (Defs. Br. at 17-19). Defendants argued that Officers 1-5 and 7-11 are not similarly situated to Plaintiff because they, unlike Plaintiff, were not out on leave for more than one year without GML § 207-c benefits. Defendants further argued that the Officers are not appropriate comparators because, *inter alia*, they applied for benefits to different decision-makers: Officer 6 applied for benefits with Chief Dolan (56.1 Stmt. ¶ 124) and Chief Weidel (*id.* ¶ 160); Officer 8 applied for benefits with Chief Weidel, (*id.* ¶ 203); and Officer 9 applied for benefits with Chief Ruggiero (*id.* ¶ 211). "As Plaintiff did not respond to Defendants on th[ese] points, he effectively conceded the argument by his failure to respond." *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) (cleaned up); *see also Allegrino v. Ruskin Moscou Faltischek, P.C.*, No. 19-CV-08900, 2021 WL 429121, at *5 (S.D.N.Y. Feb. 8, 2021), *aff'd*, No. 21-484-CV, 2021 WL 5500084 (2d Cir. Nov. 24, 2021). Even if Plaintiff had not effectively conceded the argument by his failure to respond to it, the evidence in the record demonstrates that Plaintiff was not "similarly situated in all material respects" to Officers 1-5 and 7-11 with whom she seeks to compare herself. *Graham*, 230 F.3d at 39.

Plaintiff was similarly situated to Officer 6, Officer 6 was not actually treated any differently, or more favorably, than Plaintiff.

The Town informed Officer 6 in December 2019 that his employment would be terminated under Civil Service Law § 71 for staying out without GML § 207-c leave for more than a year, just as it did with Plaintiff. (Dorfman Decl., Ex. R ¶ 7). Pursuant to a settlement agreement with the Town, Officer 6 agreed to retire from the Department in lieu of termination. (56.1 Stmt. ¶ 164). The termination letters sent to Plaintiff on January 28, 2016 and May 18, 2016 suggested that she "should consider contacting the Employees' Retirement System . . . to determine your possible eligibility for various retirement benefits, including accidental disability retirement. If you intend to do so, you should act promptly." (Dorfman Decl., Ex. M). There is no evidence in the record indicating that Plaintiff sought out options for retirement while it appears that Officer 6 did.

Officer 6—the only comparator proffered by Plaintiff—was informed that his employment was being terminated under Civil Service Law § 71 for staying out without GML § 207-c leave for more than a year. Simply put, Officer 6 was not treated differently from Plaintiff, and therefore, Plaintiff's comparator evidence fails as a matter of law. Plaintiff has not shown that Defendants treated her less favorably than a similarly situated employee outside her protected group and

therefore, she has not met her burden to establish the fourth element of a *prima facie* case of discrimination.[8]

Accordingly, Defendants are entitled to summary judgment on all of Plaintiff's remaining claims for relief.

II.    Phases Two and Three: Legitimate, Non-Discriminatory Reason and Pretext

Assuming *arguendo* that Plaintiff could establish a *prima facie* case of discrimination, her discrimination claims would nonetheless fail because she has not presented any evidence that Defendants terminated her because of her race or gender. Rather, Defendants' decision to terminate her was based on "Civil Service Law § 71, which authorizes public employers to medically separate civil servants if they are out on medical leave for more than one year, and fail to demonstrate that they are fit to return to full duty." *Wiggins v. New York City Dep't of Correction*, No. 06-CV-01946, 2008 WL 3447573, at *10 (S.D.N.Y. Aug. 12, 2008). Moreover, the New York State Supreme Court upheld the propriety of her termination in an Article 78 Proceeding. (Dorfman Decl., Ex. P). Because Defendants had a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment, the burden shifts back to Plaintiff to show that the proffered

---

[8] Plaintiff also argues that, had she been offered a light duty assignment, she would have come in to work, so she would not have been out on leave for over one year without GML § 207-c protection, and therefore she would not have been terminated under Civil Service Law § 71. She argues that an inference of discrimination can therefore be drawn because Officer 6 was offered light duty assignments while she was not. This argument is unavailing, speculative, and without evidentiary support. First, the only issue before this Court is whether Plaintiff's termination was discriminatory, not whether the failure to offer light duty status was discriminatory. Second, any claim that Plaintiff should have been granted GML § 207-c benefits was dismissed by the Prior Order. The ability to take light duty status requires that the employee be on GML § 207-c leave: Ramapo PD policy provides that officers who are out on GML § 207-c disability may be directed to return to work to perform transition duties (which Plaintiff explains has the same meaning as "light or modified" duty assignments (Tyson Aff. ¶ 4)). (56.1 Stmt. ¶¶ 66, 68). In other words, this argument is not properly before this Court because the availability of light duty depends on GML § 207-c benefits, and any such claim has already been dismissed. In any event, the argument fails on the facts and law because Plaintiff was not granted leave with GML § 207-c status, while Officer 6 had been granted leave with GML § 207-c status.

reason is a pretext and that the real reason for her termination is unlawful discrimination. *Wesley-Dickson*, 973 F. Supp. 2d at 397.

This third phase of the *McDonnell Douglas* burden shifting analysis requires Plaintiff to "come forward with 'sufficient evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'" *Hartley*, 785 F. Supp. 2d at 180 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)); *see also Rajcoomar v. TJX Cos., Inc.*, 319 F. Supp. 2d 430, 438 (S.D.N.Y. 2004) ("The Supreme Court has articulated that 'a reason cannot be proved to be a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.'" (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993))). To show pretext, "a plaintiff must submit admissible evidence showing circumstances to permit a rational finder of fact to find that the defendant's conduct was motivated in whole or in part by discrimination." *Rajcoomar*, 319 F. Supp. 2d at 438.

Pretext can be demonstrated "by providing evidence such that a reasonable factfinder could conclude that the prohibited reason was a 'motivating factor' in the adverse employment action.'" *Amley v. Sumitomo Mitsui Banking Corp.*, No. 19-CV-03777, 2021 WL 4429784, at *16 (S.D.N.Y. Sept. 27, 2021) (quoting *Greenberg v. State Univ. Hosp. Downstate Med. Ctr.*, 838 F. App'x 603, 606 (2d Cir. 2020)). This standard, applicable Plaintiff's NYSHRL claims, does not require proof that discrimination was the sole cause of the employer's action, as there may exist multiple "but-for" causes, each one of which may be sufficient to support liability. *Zann Kwan*, 737 F.3d at 846 n.5.

Plaintiff's § 1983 claims at this third step of the *McDonnell Douglas* analysis are subject to a higher burden than her NYSHRL claims in establishing that the employer's alternative,

16

nondiscriminatory reason for the adverse employment action is "pretextual." *Naumovski*, 934 F.3d at 214. Because Plaintiff fails to meet the lesser burden of showing that defendant's conduct was motivated in whole or in part by discrimination—the standard applicable to her NYSHRL claims— relief is foreclosed on her § 1983 claim that is subject to the more stringent standard. Simply put, because the record does not establish that discrimination was even a motivating factor in her termination, Plaintiff cannot establish that discrimination was the "but-for" cause of her termination. *Id.* at 214.

A plaintiff may establish that an employer's stated reasons for termination are pretextual by pointing to direct evidence of discrimination or by evidence that she was treated differently from other similarly situated employees. *Johnson*, 2023 WL 2637456, at *4. Here, Plaintiff provides no direct evidence of discrimination. She argues only that pretext can be inferred based on differential treatment of other similarly situated employees. "A showing that similarly situated employees belonging to a different [protected class] received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for . . . discrimination." *Graham*, 230 F.3d at 43; *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 108 (2d Cir. 2010) ("[T]he fact that other younger employees were not disciplined for violating numerous policies is both prima facie evidence of discrimination (i.e., it suggests that [Plaintiff] may have been treated differently from similarly situated coworkers), and evidence that the reasons given by [Defendant] for firing [Plaintiff] were pretextual.").

As set forth in detail *supra*, Plaintiff abandoned the argument that she is similarly situated to Officers 1-5 and 7-11, and as regards Officer 6, the record is clear that Officer 6 was not actually treated any differently, or more favorably, than Plaintiff. No reasonable jury could find on this

evidentiary record that Defendants' non-discriminatory reason for terminating Plaintiff's employment was pretextual. There is no evidence in this record to suggest that Defendants' termination of Plaintiff's employment was motivated in any part by discrimination and Plaintiff has presented no admissible evidence from which a reasonable fact finder could infer that the neutral reason proffered by Defendants was a mere pretext for illegal discrimination. Accordingly, Defendants are also entitled to summary judgment on this ground.[9]

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

The Clerk of Court is respectfully requested to terminate the pending motion (Doc. 103) and close this case.

SO ORDERED:

Dated: White Plains, New York
      June 12, 2023

_____
Philip M. Halpern
United States District Judge

---

[9] Given the conclusions reached herein, the Court need not and does not reach Defendants' alternate argument regarding qualified immunity. (*See* Defs. Br. at 21-23).